1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FEGAN SCOTT LLC**
ELIZABETH A FEGAN (Cal. Bar No. 355906)
100 Wilshire Blvd., Ste. 700
Santa Monica, CA 90401
Telephone:  312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

**FEGAN SCOTT LLC**
JONATHAN D. LINDENFELD (*pro hac vice* to be filed)
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 332.216.2101
Facsimile: 312.264.0100
jonathan@feganscott.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GREEN, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MAZDA MOTOR OF AMERICA, INC., and MAZDA MOTOR CORPORATION,<br><br>　　　　　Defendants. | Case No.  8:25-cv-01109<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Green ("Plaintiff"), individually and on behalf of all those similarly situated, files this proposed class action suit against Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO") and Mazda Motor Corporation ("MMC") (together with MNAO, "Mazda"), based upon his personal knowledge as to facts specific to him in an individual capacity, and based upon the investigation of counsel in all other respects, and alleges as follows:

I.    **INTRODUCTION**

1.    This is a class action lawsuit brought by Plaintiff on behalf of himself and a nationwide class of current and former owners and lessees of Mazda CX-90 model years ("MY") 2024-2025 (collectively, the "Class Vehicles").[1]

2.    Mazda markets its vehicles in a manner to convince consumers that they are buying a product of the highest quality that will be long-lasting and safe. However, Mazda failed to disclose to Plaintiff and similarly situated consumers that the Class Vehicles contain a safety defect that dangerously impedes braking performance.

3.    Each Class Vehicle was delivered to consumers with an identical and inherent design and/or manufacturing defect in the vehicle's braking system.[2] This defect manifests in excessive deterioration of the braking system components— including the semi-metallic brake pads, brake rotors, and calipers—decreased braking performance, and a loud, high-pitched creaking, squealing, or squeaking noise and juddering and/or vibration when the brakes are applied. The defect requires frequent replacement or repair of the vehicle's braking system components.

---

[1] Plaintiff reserves the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles after conducting discovery.

[2] The Class Vehicles' braking system refers to several components, including brake pads, brake rotors, calipers, and brake fluid, that work together to stop the vehicle when the brake pedal is pressed.

1

The uniform defect manifests when the brakes are applied during ordinary and intended use. (Referred to herein as the "Brake Defect" or "Defect").

4.    The Brake Defect poses an unreasonable safety risk to drivers and passengers of Class Vehicles, as it can cause the braking system components to become severely worn and damaged, and may lead to a complete failure of the braking system. A vehicle's braking system is responsible for slowing the vehicle or bringing it to a complete stop. Where, as here, the Brake Defect causes excessive wear of the vehicle's braking system components and brake juddering and/or vibration, safety concerns abound. Among other safety dangers created by the Brake Defect is decreased braking performance (i.e. longer stopping distances and reduced control), which increases the risk of accidents to drivers, passengers, and even bystanders.

5.    Another serious safety concern arises from the fact that the Brake Defect causes Class Vehicles to frequently, yet intermittently, emit a loud, high-pitched creaking, squealing, or squeaking noise when the brakes are applied, which is highly distracting and startling to Class Members and other drivers, nearby motorists, and pedestrians. Due to its starting and distracting nature, the Brake Defect also causes drivers to adjust their braking to minimize the volume and duration of the loud, high-pitched squeaking, interfering with expected and safe operation of the Class Vehicles.

6.    Further, the Brake Defect is dangerous because it causes Class Vehicle drivers to disregard sounds and symptoms which are typically affiliated with a deteriorating and ineffective braking system. Thus, if Plaintiff and Class Members accept what they are told by Mazda and its agent dealerships when they present the Brake Defect—that it is "normal" for brakes to squeak and squeal loudly—they are deprived of the typical warning signs related to deteriorating braking systems, namely squealing, grinding, juddering, and erratic function.

2

7.      Although the Class Vehicles' brakes were designed, manufactured, and approved by MMC to be installed on the Class Vehicles, due to the Brake Defect, the braking system fails to provide regular, reliable and safe braking and operation of the Class Vehicles when used as expected and intended. Not only did Mazda actively conceal this Defect, but it also did not reveal to Plaintiff and other Class Members or consumers that the existence of this Defect would diminish the intrinsic and resale value of the Class Vehicles.

8.      Beginning as early as January 2024, through extensive presale testing, consumer complaints, and dealership repair orders, among other internal sources, Mazda knew or should have known that the Class Vehicles' braking system contains a defect that adversely affects the drivability of the Class Vehicles and causes safety hazards, by way of decreased braking performance, but failed to disclose the issue at the time of sale or lease, repair, and thereafter.

9.      Indeed, many owners and lessees of Class Vehicles, including Plaintiff, have communicated with Mazda and its agents to request that they remedy and/or address the Brake Defect. Instead of repairing the Brake Defect in the Class Vehicles, Mazda either refuses to acknowledge its existence (claiming the Class Vehicles are operating as intended), performs repairs that simply mask the Defect while waiting for its warranties to expire, or tells consumers that Mazda is working on the issue but is unable to provide an estimate for when the Defect will be remedied. As a result, Class Vehicle owners and lessees are often required to spend hours attempting to remedy the brake defect and pay out of pocket for repair or replacement of braking system components, which do not remedy the root cause of the Brake Defect. Countless consumer reports have also shown that no action from dealerships remedies the Brake Defect, nor does it make the Class Vehicles any safer for their owners and lessees.

10.    The unworn brakes on these large, family Class Vehicles—which had a Manufacturer's Suggested Retail Price beginning at over $39,000—should not squeal, screech, make other jarring noises, or judder and/or vibrate when applied as intended and expected. Nor should the braking system components be subject to excessive deterioration. Mazda and its authorized dealerships and agents do not forewarn purchasers despite their knowledge of the Brake Defect.

11.    In March 2024, in an effort to address complaints regarding the Brake Defect, MNAO sent a service alert to its dealerships, No. SA-016/24 (BRAKE NOISE, JUDDER AND DRAGGING DIAGNOSIS AND SERVICING), as detailed below. These efforts have been entirely inadequate in remedying the Brake Defect. Rather than redesigning the defective braking system, in conducting "repairs," Mazda simply replaces braking system components, which do not remedy the root cause, or performs other ineffective measures designed to window-dress the Defect, such as applying temporary lubricants. Given that Mazda refuses to issue a recall or offer a non-temporary fix, Class Members find themselves spending hours of their time and paying out of pocket for repairs that do not resolve the Defect, leaving them driving unsafe vehicles that they cannot afford to replace.

12.    Both MMC and MNAO are listed as the warrantors of the Class Vehicles in Mazda's Warranty Booklets.[3] *See infra* ¶¶ 31, 152, 153. All Class Vehicles sold and leased by Mazda include a written express warranty, the New Vehicle Limited Warranty, with a period of "36 months or 36,000 miles whichever comes first."[4] Under the terms of the New Vehicle Limited Warranty, Mazda is

---

[3]    https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf,    pg.    1; https://www.mazdausa.com/siteassets/global-resources/vehicle-resources/owner-manuals/2025/2025-warranty-information.pdf, pg. 1 (last visited May 20, 2025).

[4] *Id*. at pg. 14; *Id*. at pg. 14 (last visited May 20, 2025).

required "to remedy during the warranty period any such defects in materials and workmanship of all parts and components supplied by Mazda" subject to various exemptions.[5] For example, "[n]ormal wear, tear, or deterioration" is not covered and "[n]ormal maintenance services" are at the owner's expense, including worn brake linings.[6] Mazda's agents represent that brake pads are considered "[n]ormal wear and tear items."[7] This is not the case where, as here, the Brake Defect causes excessive deterioration of the braking system components.

13.     Mazda also includes Replacement Parts and Accessories Warranty Coverage for the Class Vehicles. This Warranty replaces parts (other than the battery 12V) and accessories purchased by a customer from a Mazda Importer/Distributor/Dealer for the first 12 months or 12,000 miles.[8] Again, "[n]ormal wear, tear, or deterioration" is not covered.[9] Moreover, customers are responsible for installation labor charges.[10]

14.     As discussed herein, the Brake Defect causes excessive deterioration of braking system components—components typically understood to be normal wear-and-tear components not covered under warranty. Mazda has sought to evade its warranty obligations by asserting that the Brake Defect is simply the result of

---

[5] *Id.* at pg. 14; *Id.* at pg. 14 (last visited May 20, 2025).

[6] *Id.* at pg. 16; *Id.* at pg. 16 (last visited May 20, 2025).

[7] https://www.modernmazda.com/information-on-the-mazda-warranty/ (last visited May 20, 2025).

[8]     https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf,                pg.                49; https://www.mazdausa.com/siteassets/global-resources/vehicle-resources/owner-manuals/2025/2025-warranty-information.pdf, pg. 52. (last visited May 20, 2025).

[9] *Id.* at pg. 50; *Id.* at pg. 53. (last visited May 20, 2025).

[10] *Id.* at pg. 49; *Id.* at pg. 52 (last visited May 20, 2025).

normal wear-and-tear. Consumers have been quoted up to $1,500 to repair the Brake Defect and, in other cases, told that such repairs are not covered by warranty. Thus, Mazda unfairly shifts the costs to Class Members, and benefits from repeat repairs, which define the Brake Defect. Consumers may be required to pay hundreds, if not thousands, of dollars to repeatedly repair or replace braking system components or in installation charges for any component replacements covered by the Replacement Parts and Accessories Warranty Coverage.

15.    As detailed herein, Mazda has long been aware of the Brake Defect affecting all Class Vehicles. Despite this longstanding knowledge, Mazda has been unable or unwilling to adequately repair the Class Vehicles when the Defect manifests.

16.    Had Plaintiff and/or other Class Members known of the Brake Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

17.    Plaintiff and other Class Members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles and incurred out-of-pocket expenses.

18.    The conduct described herein makes Mazda liable for, among other things, breach of express and implied warranties and unfair, deceptive, and/or fraudulent business practices. In turn, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Mazda caused Plaintiff and Class Members damages, including, but not limited to, loss of value, replacement of braking system components, and other repair costs. Plaintiff and the Class Members also suffer the threat of future harm in that they are unable, due to the conduct of Mazda, as alleged herein, to rely on Mazda's advertising and statements concerning Mazda vehicles in the future and therefore will be deprived

of the ability to purchase a vehicle manufactured by Mazda though Plaintiff and other Class Members would like to do so.

19. Accordingly, Plaintiff brings this action to redress Mazda's misconduct. Plaintiff seeks recovery of damages and repair of the Brake Defect under state consumer protection statutes and applicable express and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicles.

## II. JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6), because: (a) there are one hundred or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interests and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

21. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District; MNAO is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a); MNAO is incorporated here; and Defendants are subject to personal jurisdiction here by conducting business within the State of California. Plaintiff and Class Members injuries also emanate from Mazda's actions in California. As alleged herein, each pertinent decision relating to the decision to conceal the Brake Defect from Plaintiff and Class Members and the failure to remedy the Defect, including marketing, engineering, and warranty coverage of the Class Vehicles in the United States, was made from MNAO's California headquarters in this District and by Mazda's respective executives and employees located in this District.

22.    This Court has personal jurisdiction over MNAO because it is incorporated in the State of California; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in California; and otherwise intentionally avails itself of the markets within California through promotion, sale, marketing, and distribution of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as MNAO is "at home" in California.

### A.    The Court May Exercise Personal Jurisdiction over MMC

23.    This Court has specific jurisdiction over MMC pursuant to California's long-arm statute (Cal. Code Civ. Proc. § 410.10) based on its forum-related activities from which this case arises, and the forum-related activities of MMC's primary domestic subsidiary, MNAO, which MMC substantially controls.

### 1.    MMC's Forum-Related Activities

24.    MMC designs, manufactures, markets, distributes, and sells the Class Vehicles under its registered trademark "Mazda." From Spring 2023 to the present, when Class Vehicles were sold and marketed to Class Members, MMC purposefully availed itself of the United States' legal protections by registering and maintaining registration with the United States' government for the trademark associated with its vehicles and parts, which MMC used to identify and distinguish its vehicles and parts in the United States, this District, and transferor jurisdictions.

25.    MMC purposefully availed itself of markets in the United States, selling approximately half a million vehicles per year in this market through its respective domestic subsidiary, MNAO. Indeed, MMC has purposefully availed itself of the protections of various statutes of the United States and California's common law by filing lawsuits in this District.

26.    MMC is a global automobile manufacturer who purposely availed itself of the automobile and automobile-related products' markets in California by

extensively promoting, warranting, selling, leasing, and servicing, directly and indirectly, vehicles (including the Class Vehicles) and related automobile products in California. Those Class Vehicles were defective and otherwise violated federal and California laws (as alleged herein) resulting in significant damages to Class Members in California.

27.    As alleged below, MMC promotes, on its own website, MNAO as one of its "Major Facility Overseas."[11] MMC also promotes all Mazda vehicles sold by MNAO in the United States[12] and directs U.S. consumers to MNAO's website.[13]

28.    MMC manufactured over 1,200,000 Mazda branded vehicles in 2024[14], with over 424,000 vehicles sold by MNAO in the United States. Class Vehicles manufactured in Japan are specifically segregated from other Class Vehicles that were intended for sale in other countries, and MMC placed certification labels on them that assured compliance with U.S. federal safety requirements[15],and ensured those Class Vehicles were shipped to the United States with full knowledge that MNAO would then distribute them across the United States.

29.    These Class Vehicles were not merely placed into a stream of commerce—they were directly targeted to the United States market, including California. MMC certified that the vehicles complied with United States safety

---

[11] https://www.mazda.com/en/about/facilities/#north (last visited May 20, 2025).

[12] https://newsroom.mazda.com/en/cars/ (last visited May 20, 2025).

[13] https://www.mazda.com/en/about/facilities/#north (last visited May 20, 2025).

[14]    https://newsroom.mazda.com/en/publicity/release/2025/202501/250130a.html (last visited May 20, 2025).

[15] MMC affixed Motor Vehicle Safety Standard Labels and Vehicle Emissions Control Information Labels on all Class Vehicles sold in the United States. https://www.mazdausa.com/static/manuals/2024/cx-90/contents/70060700.html.

requirements and ensured that they shipped directly to a wholly owned subsidiary responsible for distribution in the United States.

30.    MMC affixed federal safety certification labels to the Class Vehicles manufactured in Japan and directly approved the same labels for Class Vehicles manufactured in the United States, in each case knowing that they would be sold in the United States. The certification labels represented that the Class Vehicles conformed to U.S. safety standards, thereby enabling the vehicles to be sold in all 50 states.

31.    On information and belief, MMC played a key role in MNAO's analysis and decision making relating to the Class Vehicles sold in the United States containing the Defect, including the braking system. Moreover, MMC is listed, alongside MNAO, on the Class Vehicles' Warranty Booklets.[16]

32.    On information and belief, MMC was intimately involved with MNAO's monitoring of customer complaints and warranty claims relating to the Defect, their attempts to remedy the Defect, and the issue of Service Alert No. SA-016/24, described below.

2.    **MMC's Control over MNAO**

33.    MMC exercises control over MNAO through several formal and informal mechanisms.

34.    MMC purposely availed itself of markets in the United States. For example, MMC regularly submits applications to the EPA to obtain certification necessary for the sale of their vehicles in the United States.[17]

---

[16]    https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf; https://www.mazdausa.com/siteassets/global-resources/vehicle-resources/owner-manuals/2025/2025-warranty-information.pdf (last visited May 20, 2025).

[17]    https://www3.epa.gov/otaq/datafiles/FOI_STKXV_COMMON_APP_INI_R03.PD

35.    MMC and MNAO share common executives. For example, Tom Donnelly is Managing Executive Officer of MMC and President and CEO of MNAO.[18] Jeffrey H. Guyton is currently the Representative Director, Senior Managing Executive Officer and CFO at MMC.[19] He previously simultaneously held the roles of Senior Managing Executive Officer at MMC and President and CEO of MNAO.[20]

36.    MMC "has established a system for unified management of all items of quality information" to detect and solve market problems.[21] Information is gathered from distributors and dealerships in Japan and overseas, including MNAO, and "shared Companywide in real time."[22] "By using the system and closely monitoring daily progress, [MMC] investigates quality-related incidents and their causes, determines and implements improvement measures, and confirms the results."[23]

37.    MMC also has an awards system "for sharing and honoring best practices demonstrated by the staff of dealerships and distributors [including MNAO] that have contributed to increased customer satisfaction through excellent

---

F;    https://www.epa.gov/system/files/documents/2022-05/mazda-ghg-credit-high-effcy-extr-light-tech-apl-2020-12-21.pdf (last visited May 20, 2025).

[18] https://newsroom.mazda.com/en/about/executive/10803/index.html (last visited May 20, 2025).

[19] https://newsroom.mazda.com/en/about/executive/1556/index.html (last visited May 20, 2025).

[20] *Id.*

[21]                     https://www.mazda.com/content/dam/mazda/corporate/mazda-com/en/pdf/sustainability/report/2024e_all.pdf, pg. 83 (last visited May 20, 2025).

[22] *Id.*

[23] *Id.*

teamwork and the sales and service staff members who achieved outstanding results."[24]

38. MMC controls the public name and brand of MNAO. In consumer transactions, like those with Plaintiff and other Class Members, MMC's brand and logo serves as its person and subsidiaries' official seal and signature to consumers.

## III.  PARTIES

### A.  Plaintiff

39. Plaintiff Daniel Green is a New York citizen who resides in Nassau County, New York.  On or about September 30, 2024, Plaintiff and his wife leased a new Mazda CX-90 MY 2024, VIN: JM3KKBHD3R1189487, from Middletown Mazda, located at 204-206 Dolson Ave, Middletown, NY 10940.[25]

40. Passenger safety and reliability were key factors in Plaintiff's decision to lease the vehicle from Mazda. Prior to signing the lease, Plaintiff spent time researching the Mazda CX-90 on MNAO's corporate website and reviewing Mazda's promotional materials on the internet. Among other webpages, Plaintiff viewed Mazda's webpage marketing the various trim packages and safety and performance features installed in the CX-90. Each of those information sources failed to disclose the presence of the Brake Defect in the Class Vehicles.

41. Based on this research, and Mazda's marketing messages, Plaintiff believed that the Mazda CX-90 MY 2024 would be a safe and reliable vehicle for his family. At no point before Plaintiff leased the vehicle did Mazda disclose to him that the vehicle was not safe or dependable, or that it suffered from the Brake Defect, which creates safety risks.

---

[24] *Id*. at pg. 84.

[25] Middletown Mazda is part of Mazda's network of authorized dealers across the United States. MNAO promotes Middletown Mazda on its website as an authorized Mazda dealer, which includes an updated list of the dealership's inventory.

42.     Plaintiff's Mazda CX-90 MY 2024 has and continues to exhibit the Brake Defect described herein.

43.     On or about November 21, 2024, with approximately 839 miles on the odometer, Plaintiff took his vehicle to Mazda of Valley Stream, New York (Referred to herein as "Mazda of Valley Stream"),[26] complaining that his vehicle's brakes were emitting a loud, high-pitched squeaking noise.

44.     Upon inspection, the Mazda of Valley Stream service technician was able to verify Plaintiff's "concern with the squeaking noise, because he did hear it also." The technician then greased the vehicle's brake pads and hardware kit for both front and rear brakes. Also during this visit, Plaintiff was told by Mazda's agents at the dealership that, should the problem persist, he was "on the Bulletin to have [his] brakes replaced."

45.     But Plaintiff's Class Vehicle continued to exhibit symptoms of the Brake Defect, including intense squeaking noises when applying the brakes normally.

46.     On or about December 5, 2024, with approximately 1,127 miles on the odometer, Plaintiff again took his vehicle into Mazda of Valley Stream because his vehicle's brakes were still emitting a loud squeaking sound when the brakes were applied with normal and intended use.  The Mazda service technician resurfaced all rotors and pads, greased the vehicle's brake pads, and test drove the vehicle, finding that the squeak was no longer present. These repairs were only temporary and did not resolve the Defect.

---

[26] Mazda of Valley Stream is part of Mazda's network of authorized dealers across the United States. Mazda promotes Mazda of Valley Stream on its website as an authorized Mazda dealer which includes an updated list of the dealership's inventory.

47.     Plaintiff continued to experience issues with his vehicle's braking system such that, on or about December 17, 2024, with approximately 1,334 miles on the odometer, Plaintiff brought his vehicle into Mazda of Valley Stream because his vehicle's brakes were still squeaking despite numerous visits to the dealership for the same issue. As a "repair," the vehicle's wheels were all inspected and, "for customer satisfaction," the Mazda dealership disassembled the front and rear brakes, sanded the brake pads with 80 grit sandpaper, cleaned and lubed slides, and applied pad disc quiet to all pads.

48.     On December 17, 2024, Plaintiff called Mazda Customer Experience Center, located at MNAO's California headquarters,[27] after receiving a video message from the service technician at Mazda of Valley Stream explaining that the vehicle's brakes had not been replaced. Plaintiff inquired as to why Mazda had not changed the brakes and was told that the Service Manager did a "test run" and found no need to do so. When Plaintiff insisted there was something wrong with the vehicle—and explained that, during his first visit, Mazda's agents informed him that he was "on the Bulletin" to have his brakes replaced if he came back with the same issue—Plaintiff was told "there's nothing wrong with the vehicle."

49.     On December 18, 2024, Plaintiff emailed Mazda Customer Experience Center (Case #00267084) explaining that he "was asked yesterday afternoon to return the loner and pick up my car. Until this case is looked over, I assume the [sic] breaks will likely never be replaced no matter how many times I come in for the same issue."

---

[27] MNAO provides contact information for Mazda Customer Experience Center on its website and provides a PO Box for physical mail in Irvine, California, where MNAO is headquartered.

1    50.    On December 23, 2024, Plaintiff emailed Mazda Customer Experience

2    Center (Case #00267084) again, to "follow[] up on dates for a service appointment

3    for my Mazda CX90 that keeps squeaking".

4    51.    Pursuant to Mazda Customer Experience Center's instructions, on

5    January 25, 2025, with approximately 1,963 miles on the odometer, Plaintiff

6    brought his Class Vehicle into Koeppel Mazda in Jackson Heights, New York,[28]

7    due to the continued braking issues, including squeaking and juddering. The

8    dealership found "faulty components" and "verified [Plaintiff's] concern" that the

9    "brakes are squeaking."  After speaking with Mazda Hot Line, the Koeppel Mazda

10    technician replaced all brake pads and rotors.

11    52.    But when Plaintiff picked his Class Vehicle up from Koeppel Mazda

12    on February 8, 2025, the brake squeaking persisted and the brake juddering

13    worsened—both of which continue to this day and occur when driving at all speeds.

14    When picking up the vehicle, Plaintiff was told by an employee of Koeppel Mazda

15    that his car would likely be back in the shop within four months because the Brake

16    Defect is a known issue, but Mazda has no fix for it.

17    53.    Had Mazda disclosed its knowledge of the Braking Defect before

18    Plaintiff leased his vehicle, Plaintiff would have seen or heard such disclosures and

19    been aware of them. Indeed, Mazda's omissions were material to Plaintiff. Like all

20    members of the Class, Plaintiff would not have leased (or, in the case of other Class

21    Members, purchased) his Class Vehicle or would have paid less to do so, had he

22    known of the Brake Defect.

23    54.    Despite the existence of the Defect and the safety risks created thereby,

24    Plaintiff is forced to continue driving the vehicle because he is not in a financial

25

26    [28] Koeppel Mazda is part of Mazda's network of authorized dealers across the United

27    States. MNAO promotes Koeppel Mazda on its website as an authorized Mazda
       dealer which includes an updated list of the dealership's inventory.

28

position to dispose of the vehicle and replace it with a safer vehicle. The vehicle continues to suffer from excessive brake squeaking and dangerous juddering that impedes Plaintiff's ability to drive the vehicle in a normal manner. Plaintiff is forced to adjust his speed and braking based solely on the vehicle's dangerous braking performance.

55.    At all times, Plaintiff, like all Class Members, has driven in a foreseeable manner and in the manner in which the Class Vehicle was intended to be used.

56.    Plaintiff would consider purchasing or leasing a Mazda in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate

**B.    Defendants**

57.    Defendant Mazda Motor of America, Inc. d/b/a/ Mazda North American Operations ("MNAO") is a California corporation with its principal place of business at 200 Spectrum Center Drive, Irvine, California 96218.

58.    MNAO's C-Suite, executives, and employees responsible for the distribution, marketing, sales, customer service, and warranty servicing of Mazda vehicles are located at the company's Irvine headquarters. As detailed *infra*, the decisions regarding the marketing and sale of the Class Vehicles, the development and issuance of safety recalls, warranty coverage, and decisions regarding the disclosure or non-disclosure of the Brake Defect were in whole or substantial part made by MNAO at its California Headquarters.

59.    Defendant Mazda Motor Company ("MMC") is a Japanese multinational company that produces automobiles and engines. In 2023, MMC was ranked the 16th largest automaker by sales volume.  MMC, through its various entities, designs, manufactures, markets, distributes, and sells Mazda automobiles in California and throughout the United States.

60.    On its website, MMC promotes MNAO as a "Major Facility Overseas" and as its "Regional Headquarters" in North America.[29]

61.    Defendant MNAO is incorporated and headquartered in the State of California with its principal place of business at 200 Spectrum Center Drive, Irvine, California 96218. MNAO is MMC's U.S. sales and marketing division, which oversees sales and other operations across the United States. MNAO distributes Mazda vehicles and sells these vehicles through its network of dealerships that are the agents of MNAO and MMC. Money received from the purchase of a Mazda vehicle from a dealership flows from the dealer to MNAO.

62.    There exists, and at all times herein existed, a unity of ownership among MNAO and MMC and its agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

63.    Upon information and belief, MMC communicates with MNAO concerning virtually all aspects of the Mazda products it distributes within the United States.

64.    MNAO and MMC are collectively referred to in this Complaint as "Mazda" or "Defendants" unless identified separately.

65.    Upon information and belief, Mazda developed the window stickers, post-purchase owner's manuals, warranty booklets, and information included in the maintenance recommendations and/or schedules for the Class Vehicles.

66.    Mazda engages in continuous and substantial business in California and throughout the United States.

---

[29] https://www.mazda.com/en/about/facilities/#north (last visited May 20, 2025).

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Mazda's History of Emphasizing the Quality, Reliability, and Safety of Its Vehicles

67.    MMC designs, engineers, manufactures, distributes, markets and sells vehicles, including the Class Vehicles, throughout the United States through its network of authorized dealerships. MNAO promotes, sells and/or leases, markets, and distributes MMC's vehicles, including the Class Vehicles.

68.    MMC states that it is committed to safety—"making safer cars is about more than just protecting the people riding in them. Our vision is for a world with no road accidents, where all road users are safe, and drivers' lives are enriched by the freedom and joy that driving provides."[30] MMC also tracks and displays safety performance evaluations for Mazda in each market, including MNAO.[31]

69.    MNAO similarly iterates Mazda's commitment to safety and incorporates this into its own marketing. MNAO touts its design philosophy, which is "to inspire, excite and most of all—bring people joy. This philosophy guides everything we do. From technology, to design, to safety. Our cars are built by insightful craftsmen and detail-obsessed engineers who want to elevate your state of being every time you get behind the wheel."[32]

70.    Mazda primarily competes for car sales in the United States with other large automakers such as Honda, Nissan, and Kia.[33]

---

[30]    https://www.mazda.com/en/innovation/monozukuri/technology/safety/    (last visited May 20, 2025).

[31] https://www.mazda.com/en/innovation/monozukuri/technology/safety/#%E3%80%80for-u.s.-market-models%E3%80%80%E3%80%80 (last visited May 20, 2025).

[32] https://www.mazdausa.com/the-mazda-difference/mazda-spirit (last visited May 20, 2025).

[33] https://cars.usnews.com/cars-trucks/mazda (last visited May 20, 2025).

71.     In 2024, Mazda was ranked 12th in total vehicle sales in the United States,[34] with average annual sales for all vehicles, including the Class Vehicles, of over 424,382 in the United States in 2024[35] and over 1,200,000 globally.[36]

72.     The Mazda CX-90 is a full-size crossover SUV. When Mazda introduced the CX-90, it marketed the vehicle as Mazda's "new flagship vehicle with wider, longer, and more aggressive proportions that perfectly blend its high-performance appearance with world-class refinement."[37] The CX-90 is specifically marketed to families, with Mazda stating that the "CX-90 can accommodate families and friends in all three rows. Cabin space, cargo capacity, safety features, and many amenities are optimized for their needs."[38]

73.     The CX-90 MY 2024 had a starting MSRP of $37,845, and the starting MSRP for CX-90 MY 2025 vehicles was $38,045.[39] In calendar year 2024, Mazda

---

[34]   https://www.carpro.com/blog/full-year-auto-sales-report-for-2024 (last visited May 20, 2025).

[35] *Id.*

[36]   https://newsroom.mazda.com/en/publicity/release/2025/202501/250130a.html (last visited May 20, 2025).

[37] https://news.mazdausa.com/vehicles-2024-cx-90#assets_34137_167-119:123265 (last visited May 20, 2025).

[38] *Id.*

[39] https://news.mazdausa.com/vehicles-2024-cx-90#assets_34137_167-119:123268 (last visited May 20, 2025); https://www.mazdausa.com/vehicles/cx-90 (last visited May 20, 2025).

sold 54,676 CX-90 vehicles.[40] And most recently, Mazda reported selling over five thousand CX-90 vehicles in March 2025.[41]

74.    Mazda makes assurances to customers of care, durability, quality, and safety. Consistent with its marketing and public statements, Mazda falsely represents its vehicles as safe and dependable, dedicating an entire page on its website to "safety."[42] Therein, Mazda emphasizes that it "has always been unwavering in its commitment to safety."[43] Mazda also states that, in testing its vehicles, they "must perform under exceptional pressure. From intense crash tests to navigating collision avoidance, each model must show strength in every structure."[44]

75.    In 2024, MNAO's "safety" webpage recognized the importance of a reliable vehicle, stating "confident driving is better driving" and invites consumers to "[e]xperience the joys of driving with a feeling of control, safety, and confidence."[45] Among other safety features, MNAO touted "Active Safety Technology [which] helps the driver prevent accidents by supporting his or her

---

[40]    https://news.mazdausa.com/2025-01-03-Mazda-Reports-December-Sales-and-Full-Year-2024-Sales-Results-Sets-New-Sales-Records-for-the-U-S (last visited May 20, 2025).

[41]    https://news.mazdausa.com/2025-04-01-Mazda-Reports-Best-Ever-Single-Month-Sales (last visited May 20, 2025).

[42]    https://www.mazdausa.com/discover?category=safety (last visited May 20, 2025).

[43]    https://www.mazdausa.com/discover/leading-the-way-in-safety (last visited May 20, 2025).

[44]    *Id.*

[45]    https://web.archive.org/web/20240304165440/https://www.mazdausa.com/why-mazda/safety (last visited May 20, 2025).

ability to predict and avoid hazards through visual and auditory alerts."[46] MNAO further tells consumers that it is "focused on safety so you can focus on what's most important to you."[47]

76.    MNAO specifically touts the safety of the CX-90 in its marketing materials, including its braking performance. For example, a press release announcing the CX-90 MY 2024 posted on MNAO's website states: "As with all Mazda vehicles, safety is a priority for the CX-90 for both the driver and all occupants. Standard i-Activsense safety features include Smart City Brake Support, Blind Spot Monitoring, Mazda Radar Cruise Control with Stop & Go, Driver Attention Alert, Lane Keep Assist with Lane Departure Warning, and Rear Cross Traffic Alert."[48]

77.    "Safety" and "protecting what matters most" was also specifically highlighted on MNAO's website promoting the CX-90 MY 2024.[49]    MNAO stated, "Experience the joys of driving with a feeling of control, safety, and confidence."

78.    Likewise, in MMC's press release announcing the pricing and packaging for the CX-90 MY 2024, the word "safety" was mentioned a dozen times—recognizing the materiality of safety performance to consumers.[50]

---

[46] *Id.*

[47] *Id.*

[48] https://news.mazdausa.com/vehicles-2024-cx-90#assets_34137_167-119:123268 (last visited May 20, 2025).

[49] https://web.archive.org/web/20240204015722/https://www.mazdausa.com/vehicles/cx-90 (last visited May 20, 2025).

[50] https://news.mazdausa.com/vehicles-2024-cx-90#assets_34137_167-119:123268 (last visited May 20, 2025).

Specifically, MMC emphasized that "safety is a priority for the CX-90 for both the driver and all occupants."[51]

79.    Notwithstanding the presence of the Defect in Class Vehicles, which can impact braking performance and lead to increased risk of accidents, MMC emphasizes "SAFETY—MAXIMIZE YOUR POTENTIAL FOR PEACE OF MIND AND THE FREEDOM TO FOCUS"[52] and MNAO represents that "SAFETY ISN'T JUST A FEATURE—IT'S OUR COMMITMENT TO YOU."[53]

80.    "Performance from the ground up" was also promised on the CX-90 MY 2024 webpage, with MNAO marketing a "smooth, dynamic performance" experience to consumers. [54]

81.    "Safety" and the ability to "drive with a sense of security" were again specifically highlighted on MNAO's website promoting the CX-90 MY 2025.[55] The ability of the vehicle "to help you avoid collisions" was also noted, with MNAO marketing the vehicle as "dynamic" and one "that responds to changing conditions … to give you responsive performance" to consumers.[56]

82.    Likewise, a press release announcing the CX-90 MY 2025 posted on MMC's website states that this model "maintain[s] its captivating design elements,

---

[51] *Id.*

[52]    https://www.mazda.com/en/innovation/monozukuri/technology/safety/    (last visited May 20, 2025).

[53] https://www.mazdausa.com/discover/leading-the-way-in-safety (last visited May 20, 2025).

[54] https://web.archive.org/web/20240204015722/https://www.mazdausa.com/vehicles/cx-90 (last visited May 20, 2025).

[55] https://www.mazdausa.com/vehicles/cx-90 (last visited May 20, 2025).

[56] *Id.*

interior craftsmanship and IIHS award winning safety. For 2025, the CX-90 receives customer centric updates to model packages, safety technology and seating options to give drivers and passengers more options throughout the CX-90 model line-up."[57]

**B.    The Class Vehicles Suffer from the Brake Defect, Which Poses an Unreasonable Safety Risk**

83.    For consumer vehicles marketed to families, like the Class Vehicles, to fulfill their purpose of passenger transportation, they must be able to perform two basic functions: driving and stopping. If a vehicle is unable to perform either function safely or reliably, the vehicle simply does not serve its intended purpose.

84.    A vehicle's braking system is a crucial safety mechanism that slows down or stops the vehicle by converting kinetic energy into heat through friction. When the driver presses the brake pedal, hydraulic pressure forces brake calipers to squeeze the brake pads against the spinning rotor, which turns the wheels. In doing so, the brake pads are responsible for seizing the rotor movement by producing friction that turns the rotor's kinetic energy into thermal energy, pulling the rotor to a stop. Below is a diagram of the braking system:

---

[57]    https://news.mazdausa.com/vehicles-2025-cx-90#assets_34137_178-119    (last visited May 20, 2025).



85.    The Brake Defect manifests in premature and excessive deterioration of the Class Vehicles' braking system components, including the semi-metallic brake pads,[58] decreased braking performance, loud, high-pitched squealing, creaking, or squeaking noises, and juddering or vibration when the brakes are applied during normal operation.  The Defect requires frequent replacement or repair of the vehicle's braking system components, including the brake pads, calipers, and rotors.

---

[58] Mazda equipped all Class Vehicles with the same brake pads.  see https://parts.mazdausa.com/p/Mazda__CX-90/ATTACHMENT--PAD-FRONT/132613227/K2YF3329Z.html; https://parts.mazdausa.com/p/Mazda__CX-90/ATTACHMENT--PAD-FRONT/132613232/K1YW3329Z.html  (last visited May 20, 2025).

86.     According to Mazda dealerships, brake pads should last 30,000 to 65,000 miles.[59] But Class Vehicle drivers complain of brake issues leading to pad replacements within the first thousand miles of the vehicles' lives.

87.     While replacement of the braking system components, such as brake pads, rotors, and calipers, may address the creaking, squealing, or squeaking noise temporarily, because the replaced components do not remedy the root cause of the Brake Defect, the replaced parts will quickly deteriorate again after applying the brakes during ordinary and intended use, thereby causing the creaking, squealing, or squeaking noise to return, in addition to juddering and/or vibration and decreased braking performance.

88.     The same Brake Defect is inherent and causes unsafe conditions and safety risks for consumers, including Plaintiff and Class Members.

89.     Authorized Mazda dealerships, and agents of Mazda, recognize the critical nature of properly functioning brakes and warn customers that, "[y]our vehicle's brakes are your first line of defense."[60] "Brake pads and rotors are essential for maintaining your Mazda's safe braking performance."[61] A "Squealing or Squeaking Noise" or "Reduced Braking Responsiveness" are common indicators of worn brake pads and rotors.[62] One dealership warns, "[i]f you ever hear this

---

[59]     https://www.rochestermazda.com/blogs/2755/how-often-should-you-replace-your-mazdas-brake-pads/ (last visited May 20, 2025).

[60]     https://www.townnorthmazda.com/service/service-tips/how-much-to-replace-brake-pads/ (last visited May 20, 2025).

[61] https://www.seacoastmazda.com/mazda-brake-pads-rotars-replacement.html (last visited May 20, 2025).

[62] *Id.*

sound while braking, you'll need to have at least one pad replaced right away."[63] That is because "[w]orn pads are dangerous and could result in an accident."[64]

90.    Worn brake pads have severe consequences for the performance and safety of the Class Vehicles. Deteriorated brake pads suffer from decreased brake efficiency, pedal vibration, increased noise, and cause wear on other brake components, such as rotors and calipers. As rotors deteriorate, they lose their ability to generate friction with the brake pads, resulting in longer stopping distances and reduced control. The same is true for calipers which, when deteriorated, can reduce braking efficiency, increase stopping distances, and cause excessive pad wear. As a result, the Brake Defect decreases Class Vehicles' overall braking performance which increases risk of accidents for consumers. Because the Defect causes the premature deterioration of braking system components, Class Vehicles are subject to brake performance issues tens of thousands of miles earlier than expected, including within the vehicle's first 1,000 miles.

91.    The Brake Defect also manifests in a loud, high-pitched creaking, squealing, or squeaking noise emitted frequently, yet intermittently, by the Class Vehicles, and brake juddering and/or vibration when the brakes are applied. Brake judder makes handling your vehicle more difficult and can pose a danger to yourself and others. Moreover, due to the startling and distracting nature of the high-pitched squeaking noise, the Brake Defect causes drivers to adjust their braking to minimize the volume and duration of the loud, high-pitched squeaking. Whether this includes braking harder and shorter, or avoiding braking wherever possible, or some other method, it interferes with the regular, expected, and safe operation of the Class

---

[63] https://www.rochestermazda.com/blogs/2755/how-often-should-you-replace-your-mazdas-brake-pads/ (last visited May 20, 2025).

[64] https://www.floodmazda.com/blogs/2937/brake-service-intervals/ (last visited May 20, 2025).

Vehicles, increasing the risk to all putative class members and their passengers, as well as motorists and pedestrians in the Vehicles' vicinity. This heightens the risk created by the excessive wear of the braking system components that affect the Class Vehicles' braking performance.

92.    Further, the Brake Defect is dangerous because it causes Class Vehicle drivers to disregard sounds and symptoms which are typically affiliated with deteriorating and ineffective brakes. Thus, if Plaintiff and Class Members accept what they are told by Mazda and Mazda's agent dealerships when they present the Brake Defect—that it is "normal" for brakes to squeak and squeal loudly—they are deprived of the typical warning signs related to deteriorating brakes, namely squealing, grinding, and erratic function.

## C.    Mazda Knew That the Class Vehicles Suffered from the Brake Defect Prior to Its Sale of the Class Vehicles

93.    Mazda, based on the facts alleged herein and on information and belief, had knowledge of the existence of the Brake Defect and the risk it posed to Class Vehicle owners and lessees. This knowledge is based upon, among other facts: (i) Mazda's pre-sale durability testing and part sales; (ii) consumer complaints; and (iii) warranty and post-warranty claims.

### 1.    *Mazda Conducts Extensive Pre-Sale Testing of the Class Vehicles, Putting Mazda on Notice of the Defect*

94.    Mazda is experienced in the design and manufacture of consumer vehicles, including Class Vehicles. As an experienced manufacturer, Mazda conducts tests, including pre-sale durability testing, including on the vehicle's brakes, to verify that the vehicles it sells are free from defects and align with Mazda's specifications and intended use of the Class Vehicles, including routine braking.

95.    Mazda touts the "extreme measure[s]" that it puts its vehicles through during pre-sale testing to identify safety and performance issues. These tests include wind tunnel testing, climate testing, crash testing, electromagnetic wave testing, and noise vibration and harshness testing.[65]

96.    Particularly relevant here is Mazda's Noise Vibration and Harshness ("NVH") Test Chamber.[66] This testing entails placing all vehicles, including the Class Vehicles, in a chamber that "is absolutely silent to allow Mazda engineers to evaluate" noise vibration and harshness.[67] The NVH Test Chamber is so silent, "[y]ou could hear a pin drop."[68] The Chamber contains a "rolling road" that Mazda vehicles, including Class Vehicles, are tested on, which "replicates speeds of up to 137 mph."[69] "Cars spend months inside the chamber during their development" while Mazda engineers measure and assess noises—even the sound of the doors closing and opening—before making adjustments to make the vehicle more appealing.[70]

97.    The NVH Test Chamber, opened in 1989, is part of MMC's Miyoshi Proving Grounds located in Miyoshi, Hiroshima, Japan.[71]

---

[65]   https://www.mazdausa.com/discover/extreme-measure (last visited May 20, 2025).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71]   https://www.insidemazda.co.uk/2018/04/25/mazdas-merciless-tests/ (last visited May 20, 2025).

98. Mazda also has a team devoted to "Quietness Development."[72] The purpose of the Quietness Development Team is explained as follows: "You hear various sounds when you are in a car; for example, the sound of the engine, tires, wind… [w]e want to harmonize all of these sounds, and fine-tune them so that they will turn into sounds that are enjoyable to listen to."[73]

99. Following the NVH Test Chamber, Mazda vehicles, including the Class Vehicles, are subject to "many thousands of miles" of road-testing to "fine-tune how your [] Mazda will sound from inside and out."

100. Thus, through a variety of quality control metrics designed to identify faults that are correlated to the Brake Defect, including high-pitched brake squealing and brake component deterioration, Mazda knew or should have known of the Brake Defect in the Class Vehicles, prior to the time of sale or lease of Class Vehicles to Plaintiff and other Class Members.

101. If Mazda did not discover the Brake Defect in the Class Vehicles, its research and testing were insufficient to support Mazda's advertising, promotion, marketing, warranting, and selling of the Class Vehicles as suitable and safe for operation and use in the intended and reasonably foreseeable manner.

2. *Mazda Has Acknowledged to Its Dealerships an Issue with the Brakes in the Class Vehicles*

102. Mazda's first acknowledgement of brake issues in the Class Vehicles came on March 8, 2024, when MNAO issued Service Alert No. SA-016/24, titled: "Brake Noise, Judder and Dragging Diagnosis and Servicing."[74] Therein, MNAO

---

[72] *Id.*

[73] https://www.mazdausa.com/discover/extreme-measure (last visited May 20, 2025).

[74] https://static.nhtsa.gov/odi/tsbs/2024/MC-10252508-0001.pdf (last visited May 20, 2025).

identified several vehicles—including 2024 CX-90s—that "exhibit brake related concerns such as brake noise, brake judder or brake dragging." [75]

103. For a "Groan Or Squeak Noise," MNAO instructs dealerships to "refinish the brake pads (provided they have adequate thickness) using sandpaper (grit #80) or replace the brake pads with new parts."[76] MNAO also instructs that "[i]n most cases, brake rotor replacement is not necessary to remedy a brake noise condition."[77]

104. As to "Brake Judder," MNAO explains that "[b]rake judder (or warping) is caused by uneven thickness (run-out) of the brake rotor. During braking, the clearance between the pads and rotor becomes wider and narrower. This causes force onto the pads and may create a vibration. Vibration is transferred through the brake hydraulic system and/or suspension and can be felt by the customer through the brake pedal, vehicle floor and/or steering wheel. Even micron-size unevenness may cause brake judder. Brake judder is more noticeable when slowing from a higher speed."[78]

105. MNAO instructs that "[i]n most cases when brake judder is diagnosed, the rotors can be machined using an on-car lathe and the pads can be refinished using sandpaper to restore braking performance."[79] MNAO further instructs that it is unnecessary to replace rotors and pads unless "[e]xcessive unevenness (run-out) of the rotors is present that cannot be remedied by resurfacing without exceeding

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

the minimum thickness of the rotor"; "[e]xcessive heat damage to the rotor (may include heat cracking)"; or "[e]xcessive heat damage to the pads."[80]

106.  Service Alert No. SA-016/24 was updated again on June 6, 2024,[81] August 21, 2024,[82] and October 4, 2024.[83] By June 6, 2024, the Service Alert had expanded the applicable MY to include, among others, the CX-90 MY 2025.[84]

107.  Given that information from MNAO is "shared Companywide in real time" with MMC to allow MMC to implement improvement measures to address quality-related issues, Mazda was aware of the need for Service Alert No. SA-016/24 and its various updates.[85]

108.  However, Mazda's repair procedures fail to remedy the Defect and, as shown by Plaintiff's experience and the reports by many consumers detailed below, are temporary band-aids, at best, that Mazda employs to run out the clock on its warranties. While refinishing and/or replacement of the brake pads, rotors, calipers, and/or other brake-related parts may temporarily address the creaking, squealing, or squeaking noise, because the replaced components do not remedy the root cause

---

[80] *Id.*

[81] https://static.nhtsa.gov/odi/tsbs/2024/MC-11003396-0001.pdf (last visited May 20, 2025).

[82] https://static.nhtsa.gov/odi/tsbs/2024/MC-11007009-0001.pdf (last visited May 20, 2025).

[83] https://static.nhtsa.gov/odi/tsbs/2024/MC-11009644-0001.pdf (last visited May 20, 2025).

[84] https://static.nhtsa.gov/odi/tsbs/2024/MC-11003396-0001.pdf (last visited May 20, 2025).

[85] https://www.mazda.com/content/dam/mazda/corporate/mazda-com/en/pdf/sustainability/report/2024e_all.pdf, pg. 83 (last visited May 20, 2025).

of the Brake Defect, they will quickly wear again, causing the creaking, squealing, or squeaking noise to return.

3.    *Consumer Complaints Also Put Mazda on Notice of the Defect*

109.  MMC gathers information from MNAO in "real time," to "monitor[] daily progress" and "investigates quality-related incidents and their causes."[86]

110.  Numerous customer complaints filed by Class Members on various consumer websites and message boards about the Brake Defect establish that Mazda knew, or should have known, of the Defect ***at least*** as early as January 2024, based on publicly-available information.

111.  As the complaints below describe, scores of consumers complained of brake noise and judder issues, as Mazda recognized in its Service Alert. But when these consumers complained to Mazda, they were given a variety of excuses for the braking issues in the Class Vehicles in which Mazda deflected responsibility.

112.  For example, in January 2024, a Class Member started a thread on Reddit's "MazdaCX90" page titled "Squeaky Brake Issue Update" and explained:

> Mentioned my squeaky break issue, **which was addressed at the 5k service**, but whatever they did made only a short term difference. This time, **they said Mazda is aware of the problem and they are waiting on a fix, and the current recommendation was to note the problem in the system and take no corrective action** …  I'm inferring that the problem is excessive brake dust." (emphasis added).[87]

113.  Other Class Members were quick to respond with additional complaints of brake squealing, criticizing Mazda dealerships' responses to the Brake Defect:

> Ours is in with second complaint on the brakes squealing. They acted like they'd never heard it before, and seemed to lay some blame on us

---

[86] *Id.*

[87] https://www.reddit.com/r/MazdaCX90/comments/1bkjknq/squeaky_brake_issue_update/ (last visited May 20, 2025).

that there was 'brake dust on the wheels.' … I haven't been too impressed with the dealer response to some of these issues. I know there likely isn't a magic fix until Mazda comes out with replacement brake pads, but insinuating me using the brakes and causing brake dust is a cause seems disingenuous."[88]

In response to the comment above, someone complained, "I got kind of the same the first time, 'lots of dirt and brake dust we cleaned up'. Not so this time."[89] Another consumer,  added: "Ours were replaced on the front but the problem persisted. Dealer replaced the rears and problem persisted. Received new parts from a fresh batch and problem seems to be fixed. **Mazda regional told our dealer that two batches of parts were bad.** I'm assuming it's the pads but not sure. Could have been the rotors. (emphasis added)."[90]

114. Another Class Member, responded to the above comments and expressed frustration with having to repeatedly go to Mazda dealerships about their Class Vehicle's brakes with no fix in sight:

> **I've had my cx90 phev in about 6 times for the brakes**. I have videos of them saying that it's the regenerative brakes and that's why it makes a screeching noise. To me it's bogus. If I would of known that I've been to the dealership over 10 times for all the recalls and the brakes then I wouldn't of bought the [$]55k vehicle. And last time they even chipped my door paint when finished with the car. (Emphasis added).[91]

115. Several months later, on May 18, 2024, a Class Member  started a thread on a different message board devoted to Mazda CX-90s, *cx90forum.com*, titled "Embarrassing not having a permanent fix for squeaking brakes and creaky suspension" and explained:

---

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

Took mine in again for routine maintenance and **they did round 2 of putting grease on the suspension. It'll only last a month or so. Also they do not have a fix for brakes that squeak still.** Embarrassing that I roll to a stop with brakes that sound like a 20 year old car. (Emphasis added).[92]

116.  That same day, a Class Member added similar frustrations: "Dealer replaced rear passenger caliper, pad, and rotor. Squeak was gone for literally 1 week then came back. Disappointing."[93]

117.  On May 19, 2024, another Class Vehicle owner confirmed Mazda dealerships' failure to address the Defect:

My right rear brake have been squeaking under moderate to heavy breaking since new. Dealer tried to re-lubricate the assembly hardware the first time I took it in and it didn't work. Their 2nd attempt was to applied anti squeal compound to all brake pads, which make the squealing worse. Their 3rd fix attempt was to replace both the rear brake pads and resurface the rotors, which did eliminate the squealing noise for about a week, before getting noisy again. I got tired having to keep taking the car in....[94]

Later that day, a different consumer added, in the same thread, that the Mazda dealership stated nothing was wrong with the vehicle:

Mine went in a few weeks ago for a few different things and the brake squeak was one of them. They had already applied grease on the back plate and sanded the pad surface back in Nov and the squeak was back in less than 600 miles... **This time they replaced the front pads as a courtesy and handed me paperwork from Mazda that says why that's normal to occur...**" (Emphasis added).[95]

---

[92]   https://www.cx90forum.com/threads/embarassing-not-having-a-permanent-fix-for-squeaking-brakes-and-creaky-suspension.1301/ (last visited May 20, 2025).

[93]  *Id.*

[94]  *Id.*

[95]  *Id.*

The paperwork provided to the Class Member was Service Bulletin SA-016/24 – Brake Noise, Judder and Dragging Diagnosis and Servicing.

118.  Class Members continued to share frustrations with their Class vehicles and Mazda online, including experiencing the Brake Defect in a brand new vehicle: "I think these cx90 pads are just dog sh[*]t pads. Mine squeals randomly, I hear it maybe once a week. Still stupid though on a new car. **It's never normal for pads to squeal**. Everything from Ferraris to Corollas are driving around with quiet pads.... No reason for this car to be noisy." (Emphasis added).

119.  Shortly thereafter, in June 2024, a thread on Reddit's "MazdaCX90" page was created titled "Noise/slight vibration in brakes." The initial post explained that: "I've been noticing for a while that when I brake relatively gently I'll feel a slight bubbly/sandy vibration in the brake peddle. You can hear it too … Has anyone else noticed this?"[96] That same month, a consumer responded, asking the driver: "Does it feel like warped rotors? Ha[d] a couple of Mazda 6s before the CX90, and those are very prone to warped brake rotors." [97] Another Class Vehicle owner responded to the initial post in July 2024 and explained:

> We have this in our premium plus PHEV. Noticed it right after getting the car in April. Took it back to the dealer, who was able to recreate it, and had no idea what it was. Contacted Mazda corporate and they replaced the entire brake unit, but it's still happening. Tech had no further guidance other than a guess it's something about the way the car is made. While they had the car, we had a MHEV loaner – and experienced the same thing.[98]

---

[96] https://www.reddit.com/r/MazdaCX90/comments/1dfx19j/noiseslight_vibration_in_brakes/ (last visited May 20, 2025).

[97] *Id.*

[98] *Id.*

120.  Shortly thereafter, on July 27, 2024, a consumer created a thread titled "Squeaky brakes and suspension stull creaking" on *cx90forum.com*. The driver expressed his frustration with Mazda's refusal or inability to issue an actual fix for the Defect:

> My brakes squeaking is embarrassing to say the least. **Has this still not been addressed?** I really don't know what to do about it? **I've had the dealership tell me there's no fix for the brakes a few months ago.** The suspension there is only the temporary fix. I'm frustrated with this driving this expensive car and having terrible sounding brakes and loud suspension. (Emphasis added).[99]

121.  On July 29, 2024, a consumer responded to the above complaint and noted Mazda's attempt to evade warranty coverage: "I'm wondering if we just need different pads. I had the dealership regrease pads and pins at 10k mi and the squealing came back within 100mi after. **Had to fight with them to do it under warranty as Mazda only covers it for 12mo.** Which is absolutely stupid." (Emphasis added).[100] On December 7, 2024, another consumer added: "Yes! This right here! I'm having the exact same issue. I mean exactly."[101]

122.  On December 10, 2024, a Class member  also responded to the above complaints and explained that Mazda described the Brake Defect as normal: "I didn't ask them to replace [the pads]. **I just complained about the squeal and they changed them out and handed me material from Mazda stating that the high**

---

[99]     https://www.cx90forum.com/threads/squeaky-brakes-and-suspension-stull-creaking.1458/ (last visited May 20, 2025).

[100] *Id*.

[101] *Id*.

1 **performance compound used could produce noise and it's normal**." (Emphasis
2 added).[102]

3    123. On January 8, 2025, another consumer contributed with his
4 dissatisfaction with Mazda repairs: "… First TSB involving greasing only fixed it
5 for a couple of months in 2024. Then the rubber parts were added under a new TSB,
6 only fixing the creak for a couple more months."[103]

7    124. On Reddit's "MazdaCX90" page, in August 2024, a Class member
8 started a new thread titled "CX90 brake noise" and included a video of his vehicle
9 complaining of "brake noise on very low speed" and asked whether "anyone has
10 this problem?"[104]

11    125. A consumer was quick to respond: "**You're far from the first and
12 likely not the last.** People have had differing levels of success but usually it seems
13 to go: **dealership will replace pads or lube some stuff and it won't go away.**
14 Good luck." (emphasis added). [105]

15    126. Also on Reddit's "MazdaCX90" page, in October 2024, another Class
16 Member started a new thread titled "Squeaking breaks" and explained:

> 17    Hello fellow owners, I'm reaching out to see if any of you are having
> 18 this issue. I recently purchased a new 2024 cx90 Preferred Plus. Just
> 19 three weeks ago. After driving it for 3 days, I noticed a sound when
> 20 breaking. Called the dealer, told me to give it a few days and call Back
> 21 if it didn't go away. It didn't. Ended up taking it in. They said pads and
> rotors were perfect. They wiped them clean and applied a lubricant. The
> following day, it started again. I'll be taking it in again. This can't be

22

---

23 [102] *Id.*

24 [103] *Id.*

25 [104] https://www.reddit.com/r/MazdaCX90/comments/1ev0p90/cx90_break_noise/
26 (last visited May 20, 2025).

27 [105] *Id.*

28

normal with a new car, right? Did I get a lemon???? What can I do? Thank you.[106]

127.   Once again, Class Members responded to the above thread and shared similar frustrations, including noting Mazda's representations that the Brake Defect was not an issue:

a.   "Me too. I took the car in, CX-90 TPP, and they said the brakes were fine that it might have just had some condensation or sitting at an angle. Both were inaccurate. Happens all the time." To this, another driver exclaimed: "That's the same they told me. I've taken it in twice and it still continues doing it. It's so frustrating!!"[107]

b.   "Welcome to the club! Mine has never gone away, but at 17,500mi, it's been at the dealer for 2 weeks without diagnosis after Engine and Hybrid System Malfunction errors showed up. I'll be lemoning mine soon. Good riddance."[108]

c.   "I have a 2024 CX 90. I've taken it in twice now (again yesterday) for squeaking brakes. The dealership told me that Mazda uses a new material in the brakes which causes squeaking until you wear them in a bit. He said I should only hear the sound when I first drive each time and then the sound should go away after stopping/applying brakes 7-10 times. Last night I drove 30 miles

---

[106]   https://www.reddit.com/r/MazdaCX90/comments/1fm5fld/squeaking_breaks/ (last visited May 20, 2025).

[107] *Id.*

[108] *Id.*

and the brakes were still squeaking. It's super annoying for a new car. It's my second Mazda but they may have lost a customer."[109]

128. In December 2024, on Reddit's "MaxdaCX90" page, a consumer started a thread titled "Break High Pitch Noise at Low Speed" and explained "high pitch noise on right side breaks at slow speed. I already took it to the dealer and they replace one breakpad which was fractured as to width fully there as this vehicle has 3K miles only. **Admitted this is an issue with Mazda CX90 Ceramic breaks.** After they changed the breakpad at the dealer the noise start back up literally a week later. Anyone had similar experience?" (Emphasis added).[110]

129. A Class member quickly responded to the initial post, adding that "On my MHEV, I've had my vehicle back to the dealership 4 times for squeaking brakes. Pads were never replaced as they are not worn (only 20,000 KM in 18-months), but the[y] oil them, they're good for a few thousand, then act up again. I've essentially given up…."[111] In March 2025, a Class Vehicle owner responded to the initial post from December 2024 and complained: "Same issue! **I was told that until enough people file a formal complaint with Mazda, they won't put out a TSB on it and create a fix.** The service department will typically not do this for you. If you go to Mazda's website and chat with someone, you can file a complaint. It only took 5 minutes. Hoping enough people do this. So absurd and annoying." (Emphasis added).[112] In January 2025, the owner of a 2025 CX-90 started a new thread in Reddit's "MazdaCX90" page titled: "Brake Squeaking on '25 Models." This

---

[109] *Id.*

[110] https://www.reddit.com/r/MazdaCX90/comments/1gubmcs/break_high_pitch_noise_at_low_speed/ (last visited May 20, 2025).

[111] *Id.*

[112] *Id.*

consumer explained that, just like the 2024 CX-90, his 2025 CX-90 was also experiencing squeaking brakes:

> I combed through the reddit and FB groups, saw a lot of brake squeaking on the 2024's and was wondering what's the state of the 2025 models. My 2025 PHEV has some squeaking, but it's a little inconsistent … Usually at low speeds. I'm at ~1500 miles so I also don't know if it's just part of breaking it in. Has anyone with 2025's talked to a dealer and gotten the latest? …[113]

130. Shortly thereafter, Class Members responded to the above complaint with their own experiences. One person explained that Mazda expressed that there was no fix for the Brake Defect: "I've had this for a while now and **they said Mazda is aware of the issue but doesn't have a fix**." (Emphasis added).[114]

131. Several Class Vehicle owners also expressed concerns with Mazda's ineffective repairs to address the Brake Defect: "Mine at 4,000 had the dealership change the brake pads. Stopped for about a week before it returned lol"; "2 dealers and they 'lubricated' it. Complete bs squeaks at low speed."[115]

132. Another consumer expressed frustrations with having to pay out-of-pocket to repair the Brake Defect:

> My 2024 MHEV brakes squeak intermittently. Took to dealer- they couldn't duplicate while they had it (of course) nothing they can do unless they hear it. **Told I could have them replaced for $1500 out of pocket** 🙁 . My husband could change them out but if he messed anything up it would void the warranty 😮‍💨 . As I drive off the lot they

---

[113] https://www.reddit.com/r/MazdaCX90/comments/1h8gx3r/brake_squeaking_on_2 5_models/ (last visited May 20, 2025).

[114] *Id.*

[115] *Id.*

squeaked but because they didn't witness and hear it they can't do anything. 😡 (emphasis added).[116]

133.  In January 2025, another Class member explained that the dealership had elevated the Brake Defect higher up in Mazda:

> Mine has been in the shop this week for this very issue. They greased the contact points to minimize it. I have yet to get it back so I can't say how it is. My steering column had had a creak and they're trying to figure that out. **They've ran it up the flag pole to Mazda so it's being looked at thoroughly.** (emphasis added).[117]

134. Also on Reddit's "MazdaCX90" page, in February 2025, a Class Member started a new thread titled "CX-90 breaks…", explaining: "BRAKES so leased a 2025 CX-90 last week and i've noticed the breaks are becoming very squeaky.. and I mean a HIGH pitch squeaking.. the car has about 60 miles on it and now I have almost 500 and it seems to be getting worse . anyone else dealt with this?"[118]  Throughout February 2025, Class Members flooded the comments and responded to this complaint with similar experiences. Many spoke about the ineffective repairs by Mazda to address the Brake Defect:

> a   "My 24 pp phev (and a 25 turbo I test drove) have terrible squeaking at low speeds right when contact occurs. Brought it to the dealer for recalls and **they shaved down the lads per normal procedure...didn't help at all**." (Emphasis added).[119]

---

[116] *Id*.

[117] *Id*.

[118] https://www.reddit.com/r/MazdaCX90/comments/1htwt76/cx90_breaks/?rdt=40080 (last visited May 20, 2025).

[119] *Id*.

    b. "I had my 2024 in for this starting at less than 5k miles. At ~12k miles, they changed the pads and rotors completely and it stopped… for about 2,000 miles and now it's back and even worse. It's going back in today for 2 software recalls and they're going to look at them again, but it's as bad, if not worse, than it was before. Last time they said the pads had 'hot spots'?"[120]

    c. "Same here. They started squeaking at 1K miles and I'm now at 17K. High pitched, at both low and high speeds. Paid $60K for a car and Mazda can't even get this right. **Was told by the dealer that Mazda doesn't have a fix.** I think they cleaned them during the last service, but it didn't do anything." (Emphasis added)..[121]

    d. "About 10K on my TSPP and I have the squeaky break issue. Dealer told me that they're seeing a build up on the brake pads that is causing the noise. The regenerative recharge from the hybrid means there's less use on the pads which causes the mineral build up and the noise."[122]

135.  Throughout February 2025, other consumers responded to the Reddit thread and discussed Mazda's knowledge of the Defect:

    a. "Yes. **The dealer acknowledges it's a problem. Supposedly a fix is in the works.** Get it into the dealer to get it documented. **The dealer told us they would let us know when Mazda**

---

[120] *Id.*

[121] *Id.*

[122] *Id.*

**releases a TSB or recall.** Honestly, low speed braking on the CX-90 MHEV sucks. Very jerky." (Emphasis added).[123]

b. **"Our local dealership mentioned the brakes squealing is a known issue."** (Emphasis added).

c. "2024 PHEV with 12K. Loud squeaking always. **Told it was a 'known issue.' No fix yet**, but I complain every time I take the car in." (Emphasis added).[124]

136.  In the same thread, in February 2025, a Class Vehicle owner noted a new service bulletin to address the Brake Defect: "2024 PHEV with 5k miles. Took it in yesterday for the recalls and mentioned the brakes. **Was told there's a new service bulletin and they'd have to order new pads and shims.** Expecting it back on Tuesday." (Emphasis added).[125]

137.  In January 2025, another consumer started a thread on Reddit's "MazdaCX90" page titled: "Anyone else dealing with screeching breaks at low speeds? A couple of dealerships have told me that this is caused by the harder brake pads Mazda is using for the heavier vehicles and **there's nothing they can [do] about it**…." (Emphasis added).[126]

138.  A Class member responded to the complaint above: "Yup. Mine has been doing it since the 2,000 mile mark. It's now at 17,000 and **the dealer claims**

---

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] https://www.reddit.com/r/MazdaCX90/comments/1i7w737/anyone_else_dealing_with_screeching_breaks_at_low/ (last visited May 20, 2025).

43

**there's nothing they can do.** Mine has been doing it at high speeds lately as well."

(Emphasis added). [127]

139.  Likewise, another Class Vehicle owner explained: "Mine started at about 3k miles. I showed the dealer a TSB for squealing brakes, **the mechanic confirmed the squeak, and stated that there's little they can do.** They blamed the switch back to metallic pads." (Emphasis added). [128]

140.  Also on Reddit's "MazdaCX90" page, in February 2025, a consumer started a thread titled "Back again in Mazda dealer for brakes and e-brake replacement" explaining: "My last attempt to address the squealing brakes … finally convinced the dealer to replace them under warranty…." [129]

141.  In another online complaint a Class member bemoaned that "**its all bs they [Mazda] are trying to feed to avoid saying there are serious underlying defects with the cx90.**" (Emphasis added). [130]

142.  On information and belief, MNAO's customer service and quality control departments review consumer complaints on internet message boards, particularly those devoted to its vehicles. It is also routine for retailers such as MNAO to have a customer relations division that receives and responds to customer calls concerning, *inter alia*, product defects.

143.  Plaintiff alleges that these sources also put Mazda on notice of the Brake Defect and its danger.

---

[127] *Id.*

[128] *Id.*

[129] https://www.reddit.com/r/MazdaCX90/comments/1izu6fv/back_again_in_mazda_dealer_for_brakes_and_ebrake/ (last visited May 20, 2025).

[130] *Id.*

144.  As detailed here, Plaintiff and several of the posts in this forum confirm Mazda dealerships directly speaking with individuals higher up the chain at Mazda, providing Mazda with direct knowledge of the Defect.

4.    *Mazda Monitors Repairs and Services Under Warranty*

145.  On information and belief, MNAO's customer relations and warranty departments provide information to MMC which is then "shared Company-wide in real time" to allow Mazda to implement improvement measures to address quality-related issues.[131]

146.  On information and belief, Mazda's customer relations department, which interacts with authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of the Brake Defect and premature, excessive wear of brake-related parts in the Class Vehicles, including by Plaintiff. The customer relations department also collects and analyzes field data, including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

147.  On information and belief, Mazda's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.

148.  On information and belief, Mazda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Mazda with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Mazda later determines to audit the dealership or otherwise verify the warranty repair.

---

[131]    https://www.mazda.com/content/dam/mazda/corporate/mazda-com/en/pdf/sustainability/report/2024e_all.pdf, pg. 83 (last visited May 20, 2025).

149.  On information and belief, for their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Mazda because Mazda will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

150.  On information and belief, Mazda knew or should have known about the Defect and risk of premature wear to brake pads and other brake-related parts. It is reasonable to infer that such replacement parts were ordered from Mazda. All of Mazda's service centers are required to order replacement parts, including brake pads and rotors, directly from Mazda. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Mazda.

151.  On information and belief, Mazda routinely monitors part sales reports and is responsible for shipping parts requested by dealerships and technicians. Thus, Mazda has detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders of brake pads and rotors, and other brake-related parts, necessary to fix damage caused by the Brake Defect in the Class Vehicles was known to Mazda and should have alerted it to the scope and severity of the Defect.

**D.    Mazda Breached the Express Warranties Covering the Class Vehicles**

152.  Mazda's warranty booklets for the Class Vehicles inform consumers that the warranties are offered by both MNAO and MMC.[132]

---

[132]  https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf, pg. 1 (last visited May 20, 2025).

**AN IMPORTANT MESSAGE FROM MAZDA**

We thank you very much for choosing Mazda. We at Mazda design and build vehicles with complete customer satisfaction in mind. From the moment you get behind the wheel of your new Mazda, you'll notice how good it feels. A feeling you'll appreciate for as long as you own your Mazda.

You'll also be pleased to know how strongly we stand behind every Mazda Vehicle. The New Vehicle Limited Warranty and the Powertrain Limited Warranty described in this booklet is one of the finest available.

Together with your Owner's Manual, this warranty booklet details the operating procedures and intervals between maintenance that we recommend you follow to maximize the performance of your Mazda.

In addition, your authorized Mazda Dealer will take care of all your service needs using Genuine Mazda Parts. They'll do all they can to ensure that your Mazda Vehicle continues to exceed all your expectations.

At Mazda, it's not enough to sell vehicles that look impressive in the showroom. We're committed to making sure you enjoy your Mazda for years to come.

**Mazda Motor Corporation**
**and**
**Mazda North American Operations**

153. The warranty booklets further define "Mazda" "[a]s used" therein as "Mazda Motor Corporation, 3-1 Shinchi, Fuchu-cho, Aki-gun, Hiroshima, Japan 7308670, and Mazda North American Operations 200 Spectrum Center Drive, Suite 100 Irvine, California 92618, U.S.A."

154. The Class Vehicles include a written express warranty, the New Vehicle Limited Warranty, with a period of "36 months or 36,000 miles whichever comes first."[133] Under the terms of the New Vehicle Limited Warranty that "Mazda provides," Mazda is required "to remedy during the warranty period any such defects in materials and workmanship of all parts and components supplied by Mazda" subject to various exemptions.[134] For example, "[n]ormal wear, tear, or

---

[133] *Id*. at pg. 14.

[134] *Id*.

47

deterioration" and "[n]ormal maintenance services" are at the owner's expense, including worn brake linings.[135]

155. Mazda includes another written express warranty, the Replacement Parts and Accessories Coverage Warranty, which promises to replace parts (other than the battery 12V) and accessories purchased by a customer from a Mazda Importer/Distributor/Dealer for the first 12 months/12,000 miles.[136] Specifically, "Mazda genuine replacement parts (other than the battery 12V) and accessories purchased by a customer from a Mazda Importer/Distributor or a Mazda dealer and installed by a Mazda Importer/Distributor or a Mazda dealer are covered for the first 12 months/12,000 miles from delivery date of the part or the remainder of the warranty coverage applied to the component by Mazda, whichever is longer" and "Mazda genuine replacement parts (other than the battery 12V) and accessories purchased by a customer from a Mazda dealer and not installed by a Mazda dealer are covered for the first 12 months/12,000 miles from the delivery date of the part for the amount of the part purchase cost only excluding installation labor charges. Owners must provide a copy of the shipping invoice to support the delivery date of the Mazda genuine replacement parts and accessories for 12 month/12,000 mile limited warranty."[137] Again, "[n]ormal wear, tear or deterioration" are not covered.[138] Moreover, customers are responsible for installation labor charges.[139]

---

[135] *Id*. at pg. 16.

[136] *Id*. at pg. 52.

[137] https://www.mazdausa.com/owners/warranty (last visited May 20, 2025).

[138] https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf, pg. 50 (last visited May 20, 2025).

[139] *Id*. at pg. 49.

156.  Mazda also purports to include a Lifetime Limited Warranty for "[a]ll Mazda Genuine Parts or Value Products by Mazda Brake Pads and Shoes."[140] This Limited Lifetime Warranty applies "as long as the original purchaser of the replacement brake pads or shoes owns the vehicle on which they were originally installed."[141] "The customer is responsible for installation charges upon replacement."[142] This Limited Lifetime Warranty is not listed in the Class Vehicles' Warranty Booklets.

157.  Buyers and lessees have no ability to bargain as to the terms of the warranties.

158.  Mazda instructs vehicle owners and lessees to bring their vehicles to a Mazda dealership for warranty repairs. Many owners and lessees have presented Class Vehicles to Mazda dealerships with complaints about the Brake Defect.

159. Despite Mazda's knowledge of the problem—and presumed knowledge of how to appropriately remediate and prevent the Brake Defect from recurring—Mazda has failed to repair or remedy the Brake Defect in Class Vehicles under warranty. Instead, consumers report various different actions at Mazda dealerships:

> a. Ignoring existence of the Defect and advising consumers that the dealership will not perform corrective action to address the Defect;
>
> b. Advising consumers that the dealership is aware that the Defect is a "known" issue but there is no corrective action to address the Defect;

---

[140] https://www.mazdausa.com/owners/warranty (last visited May 20, 2025).

[141] *Id.*

[142] *Id.*

c. Advising consumers that the Brake Defect is not covered under warranty and requiring customers to pay out of pocket for some or all of the repair; and

d. Advising consumers that replacement brake-related parts, are only partially covered under warranty and thereby requiring customers to pay out of pocket for some or all of the repair.

160. Mazda breached these warranties by, *inter alia*, failing to repair or remedy the Brake Defect in the Class Vehicles. Class members complained to Mazda and authorized agent dealerships and technicians about the Brake Defect, but did not receive adequate repair, breaching the express and implied warranties provided by Mazda.

## V.    THE RELATIONSHIP BETWEEN MAZDA AND ITS NETWORK OF AUTHORIZED DEALERSHIPS RELATED TO MAZDA'S WARRANTIES

161. In order to sell and lease vehicles to the general public, Mazda enters into agreements with its nationwide network of authorized dealerships to engage in retail sales and leases with consumers. In return for the exclusive right to sell and lease new, Mazda-branded vehicles, the authorized dealerships are also permitted under these agreements with Mazda to service and repair these vehicles under the warranties Mazda provides directly to consumers who purchased new vehicles from the authorized dealerships.

162. Accordingly, Mazda's authorized dealerships are Mazda's agents, and the consumers who purchase or lease Mazda vehicles are the third-party beneficiaries of these dealership agreements, which allow the consumers to purchase and service their Mazda vehicles locally. Because Plaintiff and members of the Class are third-party beneficiaries of the dealership agreements which create the implied warranty, they may avail themselves of the implied warranty. This is true because third-party beneficiaries to contracts between other parties that create

an implied warranty of merchantability may avail themselves of the implied warranty. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010).

163.  Further, Plaintiff and each of the members of the Class are the intended beneficiaries of Mazda's express and implied warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles, and they have no rights under the warranty agreements provided by Mazda. Mazda's warranties were designed for and intended to benefit the consumers only. The consumers are the true intended beneficiaries of Mazda's express and implied warranties, and the consumers may therefore avail themselves of those warranties.

164.  Mazda issued the express warranty to the Plaintiff and Class Members. Mazda also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. Mazda also is responsible for the content of the Monroney Stickers on Mazda-branded vehicles. Because Mazda issued the express warranty directly to the consumers, the consumers are in direct privity with Mazda with respect to the warranties.

165.  In promoting, selling, and repairing its defective vehicles, Mazda acts through numerous authorized dealers who act, and represent themselves to the public, as exclusive Mazda representatives and agents. That the dealers act as Mazda's agents is demonstrated by the following facts:

a.  The authorized Mazda dealerships complete all service and repair according to Mazda's instructions, which Mazda issues to its authorized dealerships through service manuals, service bulletins, technical service bulletins, and other documents;

b.  Consumers are able to receive services under Mazda-issued warranties at Mazda's authorized dealerships, and they are able

to receive these services because of the agreements between Mazda and the authorized dealers. These agreements provide Mazda with a significant amount of control over the actions of the authorized dealerships;

c. The warranties provided by Mazda for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

d. Mazda has provided training and partnered with various technical schools to provide Mazda-specific training for technicians, so that dealerships are able to hire technicians that have completed Mazda-overseen certification courses;

e. Mazda dictates the nature and terms of the purchase or lease contracts entered into between its authorized dealers and consumers;

f. Mazda controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with Mazda's authorization;

g. Mazda has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public; and

h. Mazda implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized Mazda dealerships to address complaints of the Defect by prescribing and implementing the relevant Service Alert and warranty coverage policies discussed herein.

166. Indeed, Mazda's warranty booklets make it abundantly clear that Mazda's authorized dealerships are Mazda's agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers repeatedly to seek repairs and assistance at its "authorized dealerships."  For example, at the outset, Mazda notifies Plaintiff and Class Members in the warranty booklet that "[t]he vehicle must be brought to an authorized Mazda dealer for all warranty service."[143]

167. Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of Mazda. Plaintiff and each of the members of the Class have had sufficient direct dealings with either Mazda or their agent dealerships to establish privity of contract between Mazda, on one hand, and Plaintiff and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiff and Mazda.

## VI.    FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

168. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mazda responsible for making false and misleading statements regarding the Class Vehicles. Mazda is necessarily in possession of this information.

169. Plaintiff's claims arise out of Mazda's fraudulent omission/concealment of the Brake Defect to consumers before or at point of sale or lease, and to owners or lessees thereafter, despite Mazda's representations about the quality and safety of the Class Vehicles.

170. Plaintiff alleges that, at all relevant times, including at the time he and other Class Members purchased or leased their Class Vehicles, Mazda knew, or was reckless in not knowing, of the Brake Defect. Mazda had a duty to disclose the

---

[143]  https://www.mazdausa.com/siteassets/pdf/owners-optimized/2024/cx-90/2024-cx90-warranty-information.pdf, pg. 14 (last visited May 20, 2025).

Defect based on its superior and exclusive knowledge, yet Mazda never disclosed the Defect to Plaintiff, Class Members, or the public at any time or in any manner other than the inadequate Service Alert No. SA-016/24 related to the Class Vehicles, which is directed to dealerships and not sent to consumers.

171.  Mazda actively concealed and omitted the Brake Defect from Plaintiff and other Class Members while simultaneously touting the safety of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the names and identities of those specific individuals at Mazda responsible for such decisions.

172.  Mazda knew, or was reckless or negligent in not knowing, that the Class Vehicles all contained the Brake Defect, as alleged herein. Mazda concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

173.  Mazda concealed and omitted material information regarding the Brake Defect at all times while making representations about the safety of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Mazda has still not disclosed the truth about the full scope of the Brake Defect in Class Vehicles. Mazda has never taken any action to inform Plaintiff, Class Members, or consumers about the true nature of the Brake Defect in Class Vehicles. Instead, when consumers brought their vehicles to Mazda complaining of the Brake Defect, Mazda denied any knowledge of, or adequate repair for, the Defect.

174.  Mazda concealed and omitted material information regarding the true nature of the Brake Defect in every communication it had with Plaintiff and Class Members, despite making representations about the quality and safety of the Class Vehicles. Plaintiff is not aware of any document, communication, or other place in which Mazda disclosed the truth about the full scope of the Brake Defect in Class Vehicles, pre- or post-sale. Such information is not adequately disclosed in any

sales documents, displays, advertisements, warranties, owner's manuals, or on Mazda's website. There are channels through which Mazda could have disclosed the Defect, including, but not limited to: (a) point of sale or lease communications; (b) the owner's manual; and/or (c) direct communication with Plaintiff and Class Members through means such as state vehicle registry lists and e-mail notifications.

175. Mazda concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiff and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer. Mazda also represented in its marketing materials that the Class Vehicles have qualities that they do not have.

176. Mazda actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality and safety of the Class Vehicles. Had Mazda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## VII.   CALIFORNIA LAW APPLIES TO THE NATIONWIDE CLASS

177. It is appropriate to apply California law to the nationwide claims because California's interest in this litigation exceeds that of any other State. Plaintiff and Class Members' injuries emanate from Mazda's actions in California. Each pertinent decision relating to the decision to conceal the Brake Defect from Plaintiff and Class Members and the failure to remedy the Defect, including marketing, engineering, and warranty coverage of the Class Vehicles in the United States, was made from MNAO's California headquarters by Mazda's respective executives and employees located in California.

178.  MNAO is headquartered and has a principal place of business in Irvine, California. MNAO is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Mazda Class Vehicles.

179.  MNAO maintains its customer relations, research and development, engineering, marketing, and warranty departments at their corporate headquarters in Irvine, California. MNAO's warranty and engineering departments are responsible for the decisions to conceal the Defect from its customers, and for neglecting to inform consumers of the Defect.

180.  MNAO's customer service complaint address is Mazda North America Operations, P.O. Box 19734, Irvine, CA 92623-9734.[144] Mazda's customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites. On information and belief, the customer service department and Mazda employees contained therein are located in California.

181.  MNAO's C-Suite and employees responsible for the distribution of Class Vehicles, decision to conceal the Brake Defect, public statements to the U.S. market concerning Class Vehicles, as well as whether to repair the Brake Defect and issue a recall, are also based in California.

182.  Tom Donnelly serves as the President and Chief Executive Officer at MNAO[145] and is based at MNAO's headquarters in Irvine, California.[146] He is also a Managing Executive Officer for MMC.[147] Mr. Donnelly previously served as

---

[144] https://www.mazdausa.com/contact-us (last visited May 20, 2025).

[145] https://news.mazdausa.com/bio-tom-donnelly (last visited May 20, 2025).

[146] https://www.linkedin.com/in/tom-donnelly-26a98a8/ (last visited May 20, 2025).

[147] https://newsroom.mazda.com/en/about/executive/10803/index.html (last visited May 20, 2025).

senior vice president and vice president of U.S. sales and retail operations at MNAO where "he was responsible for overseeing U.S. vehicle sales, aftersales, and U.S. regional office operations … [and] greatly progressed Mazda's Brand Value Management in retail operations, while also improving the overall business operations and relations with Mazda dealers."[148]

183. Takeshi Nishiki serves as the Executive Vice President and Chief Financial Officer at MNAO[149] and is based at MNAO's headquarters in Irvine, California.[150]   Mr. "Nishiki is responsible for maximizing MNAO's financial resources to create a more nimble and profitable organization for the future, with a focus on advancing the region's financial strategy in its ongoing growth and path to premium."[151]

184. Shawn Murphy is the Vice President Chief Legal Officer and Corporate Secretary at MNAO and is based at MNAO's headquarters in Irvine, California.[152] Mr. Murphy is "[r]esponsible for all Legal, Government Affairs, and Audit matters including, Litigation, Corporate, Franchise/Market Representation, IP/Brand Protection,           Employment,           Contracts/Transactions,           Antitrust,

---

[148] https://news.mazdausa.com/bio-tom-donnelly (last visited May 20, 2025).

[149] https://news.mazdausa.com/mnao-executives?item=46 (last visited May 20, 2025).

[150] https://www.linkedin.com/in/takeshi-nishiki-028978144/ (last visited May 20, 2025).

[151] https://news.mazdausa.com/mnao-executives?item=46 (last visited May 20, 2025).

[152] https://www.linkedin.com/in/shawn-murphy-b133719/ (last visited May 20, 2025).

Marketing/Advertising, Board and Audit Committee Matters; all State and Federal Government Affairs matters, and Internal and Dealer Audit matters."[153]

185. Tina Chang Lam is the Program Manager of Brand Experience at MNAO and is based at MNAO's headquarters in Irvine, California.[154] Ms. Lam's responsibilities include developing and leading "execution of the Brand Experience strategy" and "[l]ead[ing] a cross-functional team through the development and execution of fully integrated marketing programs including, but not limited to: vehicle launch programs, lifestyle/brand initiatives, sponsorships, media partnership activations, owner events, influencer programs, enthusiast initiatives, and community programs."[155]

186. Yoji Maekawa serves as Vice President of Customer Service at MNAO and is based at MNAO's headquarters in Irvine, California.[156]

187. Mika Romain serves as Manager of Research and Development of MNAO and is based at MNAO's headquarters in Irvine, California.[157] Ms. Romain is "[r]esponsible for developing and managing the [research and development] business plan, business process, and financial control"; she also "oversee[s] the department's internal control."[158]

---

[153] *Id.*

[154] https://www.linkedin.com/in/tina-chang/ (last visited May 20, 2025).

[155] *Id.*

[156] https://www.linkedin.com/in/yoji-maekawa-1929898a/ (last visited May 20, 2025).

[157] https://www.linkedin.com/in/mika-romain-23a84b38/ (last visited May 20, 2025).

[158] *Id.*

188. Kelvin Hiraishi serves as the Director of Research and Development Engineering at MNAO and is based at MNAO's headquarters in Irvine, California.[159]

189. Eric Chu serves as a Vehicle Performance Engineer at MNAO and is based at MNAO's headquarters in Irvine, California.[160]  Mr. Chu's responsibilities are to "[e]valuate and test vehicle performance … to meet departmental objectives," "[m]aintain and update vehicle issue logs to prioritize resolutions," and engage in "[v]alidation testing at various phases of vehicle development."[161]

190. Tyler Mohrlock serves as a Technical Specialist at MNAO and is based at MNAO's headquarters in Irvine, California.[162]  Mr. Mohrlock's responsibilities are to "[p]rovide Mazda dealership with excellent communication and technical assistance with complete and accurate diagnostic methods encompassing all vehicle systems," "[e]nhance diagnostic routines to ensure correct technical conclusion has been determined prior to replacement of major components," and "[t]rack and report trends in vehicle manufacture errors and validate technical service bulletins and workshop manuals using Siebel."[163]  Prior to being a Technical Specialist, Mr. Mohrlock was a Service Technician at MNAO and was also based at MNAO's headquarters in Irvine, California.[164]  As a service technician, Mr. Mohrlock's responsibilities were to "[d]iagnose and repair vehicle automotive systems

---

[159] https://www.linkedin.com/in/kelvin-hiraishi-ab5948/ (last visited May 20, 2025).

[160] https://www.linkedin.com/in/eric-chu-39736a116/ (last visited May 20, 2025).

[161] *Id.*

[162] https://www.linkedin.com/in/tyler-mohrlock-301438160/ (last visited May 20, 2025).

[163] *Id.*

[164] *Id.*

including engine, transmission, electrical, steering, suspension, braking, air conditioning, etc. to specification," "[c]ontinuously learn new technical information and techniques in formal training sessions in order to stay current with rapidly changing technology," and "[i]nspect and test new vehicles and record[] findings so that necessary repairs can be made."[165]

191.  Drew Cary serves as the Head of Communications at MNAO and is based at MNAO's headquarters in Irvine, California.[166]  Mr. Cary is responsible for managing Mazda's internal and external communications.[167]

192.  MMC conducts business frequently in California by selling Mazda-branded vehicles and car parts in California, transmits and mails technical information about the vehicles and their components to MNAO and other contacts in California, and otherwise intentionally avails itself of the markets within California through promotion, sale, marketing, and distribution of its vehicles.

193.  Based on the foregoing, such policies, practices, acts, and omissions giving rise to this Defect were developed in, and emanated from, MNAO's headquarters in Irvine, California. As detailed below, Mazda came to know, or should have come to know, of the Defect through the activities of their divisions and affiliated entities located within California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

## VIII.  TOLLING OF STATUTES OF LIMITATIONS

194.  Any applicable statute(s) of limitations have been tolled by Mazda's knowing and active concealment and denial of the facts alleged herein. Plaintiff and

---

[165] *Id*.

[166] https://www.linkedin.com/in/andrewcary/ (last visited May 20, 2025).

[167]  https://news.mazdausa.com/2018-11-13-mazda-names-drew-cary-as-brand-communications-senior-manager (last visited May 20, 2025).

other Class Members could not have reasonably discovered the true nature of the Brake Defect until shortly before this class action litigation commenced.

195.  Even after Plaintiff and other Class Members contacted Mazda and/or their authorized dealer agents for vehicle repairs concerning the Brake Defect, they were routinely told by Mazda and/or through their dealers that the Class Vehicles were not defective. As described below, the true cause of the Defect is a manufacturing and/or design defect which causes premature, excessive deterioration and frequent replacement or repair of the vehicle's brake pads, rotors, calipers and/or other brake-related parts, and the Class Vehicles to exhibit a loud, high-pitched creaking, squealing, or squeaking noise.

196.  Mazda was and remains under a continuing duty to disclose to Plaintiff and the Class Members the true character, quality, and nature of the Class Vehicles, that the manufacturing and/or design defect will result in the Brake Defect, and that the Class Vehicles will require costly repairs, pose safety concerns, and diminish the resale value. As a result of the active concealment by Mazda, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## IX.    CLASS ALLEGATIONS

197.  Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE on behalf of himself and all others similarly situated.

198.  Plaintiff seeks to represent a class ("Nationwide Class") defined as:

> All persons in the United States and its territories who are current or former owners and/or lessees of a Mazda CX-90 (model years 2024-2025).

199. In addition, and in the alternative to the above, Plaintiff seeks to represent a class ("New York Class") defined as:

All persons in the State of New York who are current or former owners and/or lessees of a Mazda CX-90 (model years 2024-2025).

200. Excluded from the Nationwide Class and the New York Class (collectively, "Classes") are Mazda, its affiliates, employees, officers, and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this action.[168]

201. <u>Numerosity</u>: The Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Mazda and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis allege, that at least fifty thousand Class Vehicles have been sold and leased in the United States.

202. <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether the Class Vehicles were sold with the Brake Defect;

b. Where Mazda engaged in the conduct alleged herein;

c. Whether Mazda advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d. Whether Mazda knew of the Brake Defect but failed to disclose the problem and its consequences to its customers;

---

[168] Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

e. Whether a reasonable consumer would consider the Brake Defect or its consequences to be material;

f. When Mazda discovered the Brake Defect in the Class Vehicles, and what, if anything, it did in response;

g. Whether Mazda should be required to fully disclose the existence of the Brake Defect;

h. Whether Mazda breached its express and/or implied warranties with respect to the Class Vehicles;

i. Whether Mazda's conduct violates the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200; California's False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.* and the other statutes asserted herein;

j. Whether Plaintiff and Class Members overpaid for their Class Vehicles;

k. Whether Mazda was unjustly enriched; and

l. Whether Plaintiff and Class Members experienced out-of-pocket losses as a result of the Brake Defect, and, if so, how much.

203. <u>Typicality</u>: Plaintiff's claims are typical of the claims because Plaintiff leased Class Vehicles with the same Defect as did each member of the Classes who leased or purchased a Class Vehicle. Furthermore, Plaintiff and all members of the Classes sustained monetary and economic injuries, including, but not limited to, ascertainable losses arising out of Mazda's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

204. <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Classes that he seeks to represent, he has

retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

205. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Classes. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Mazda's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Mazda's vehicle identification numbers, warranty claims, registration records, and database of complaints.

206. <u>Declaratory and Injunctive Relief</u>: Mazda has acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole. Mazda has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

X.     **CAUSES OF ACTION**

**COUNT ONE:**
**VIOLATIONS OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *et seq.*)**
**(On Behalf of the Nationwide Class)**

207. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

208. The Magnuson-Moss Warranty Act ("MMWA") provides a private right of action against retailers who, *inter alia*, fail to comply with the terms of a consumer product's written or implied warranty. 15 U.S.C. § 2310(d)(1). As alleged herein, Defendants MNAO and MMC failed to comply with the express warranties and implied warranty of merchantability with regard to the Class Vehicles.

209.  The Class Vehicles are "consumer product[s]," as that term is defined in 15 U.S.C. § 2301(1).

210.  Plaintiff and Class Members are "consumer[s]," as that term is defined in 15 U.S.C. § 2301(3).

211.  Mazda is a "supplier" and "warrantor," as those terms are defined in 15 U.S.C. § 2301(4)-(5).

212.  The MMWA provides a cause of action for breach of a written or implied warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).

213.  Mazda's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

214.  Mazda offers a New Vehicle Limited Warranty, as alleged herein, with the purchase or lease of all new Class Vehicles thereby warranting to repair or replace any part defective in materials or workmanship at no cost to the owner or lessee for the first 36 months or 36,000 miles. Mazda also offers the Replacement Parts and Accessories Coverage Warranty, as alleged herein, which replaces genuine Mazda parts and accessories at no cost to the owner or lessee for the first 12 months or 12,000 miles. Mazda breached these express warranties by selling and

65

leasing Class Vehicles with the Brake Defect, and thus defective in materials and/or workmanship and/or requiring repair or replacement within the warranty period, and by refusing and/or failing to honor the express warranties by effectively repairing the Defect or replacing the defective parts free of charge and within a reasonable time.

215.  Mazda also provided Plaintiff and other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their Class Vehicles that is an "implied warranty" within the meaning of the MMWA, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability, Mazda warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as manufactured and marketed, and were adequately contained, packaged, and labeled.

216.  Mazda breached these implied warranties and is therefore liable to Plaintiff and Class Members pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles, including Plaintiff's vehicle, at the time of sale or lease and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles share a common defect in that they suffer from the Brake Defect and experience excessive deterioration of brake-related parts and a high-pitched creaking, squeaking, or squealing noise. Mazda has admitted that the Class Vehicles are defective through its Service Alerts.

217.  Mazda's breach of implied warranties has deprived Plaintiff and Class Members of the benefit of his bargain.

218.  Mazda was provided with notice of the claims raised by Plaintiff and was offered a reasonable opportunity to cure. Mazda failed to cure in that it has not offered a repair to Plaintiff, Class Members, and consumers for the Brake Defect. Until Plaintiff's representative capacity has been determined, notice and

opportunity to cure through Plaintiff, and on behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

219.  Mazda's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. §§ 2310(b), 45(a).

220.  Plaintiff and Class Members have suffered, and are entitled to recover, damages as a direct and proximate result of Mazda's breach of express and/or implied warranties and violations of the MMWA.

221.  Plaintiff provided notice to Mazda of these breach of warranty claims under the MMWA by letter dated May 21, 2025.

222.  Plaintiff also seeks an award of costs and expenses, including attorneys' fees in connection with the commencement and prosecution of this action under 15 U.S.C. § 2310(d)(2). Plaintiff and Class Members intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

**COUNT TWO:**
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
**(On Behalf of the Nationwide Class)**

223.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

224.  Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC.

225.  Plaintiff alleges, on information and belief, that: (a) the decisions of Mazda concerning the advertising, marketing, and warranty policies and procedures regarding the Class Vehicles emanate from MNAO's headquarters in Irvine, California; (b) Mazda's decisions on how to present Class Vehicles in advertising

in the United States emanate from MNAO's headquarters in Irvine, California; (c) decisions as to recalls, Service Alerts, and whether to make warranty repairs emanate from MNAO's headquarters in Irvine, California; and (d) the relevant personnel from Mazda work in MNAO's headquarters in Irvine, California or coordinate and make decisions concerning the above through facilities and other personnel in Irvine, California. For these reasons, Plaintiff and the Nationwide Class' claims emanate from Mazda's actions in the State of California and it is appropriate for Mazda to be held to comply with California law on a nationwide basis.

226. Mazda is a "person" as defined in Cal. Civ Code § 1761(c).

227. Plaintiff and Class Members are "consumers" as defined in Cal. Civ Code § 1761(d).

228. Mazda engaged in unfair and deceptive acts in violation of the Consumer Legal Remedies Act ("CLRA"), by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Vehicles suffer from the Brake Defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this defect). These acts and practices violate, at minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and;

(a)(9) Advertising goods and services with intent not to sell them as advertised.

229. Mazda's unfair or deceptive acts or practices repeatedly occurred in Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

230. Mazda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform an essential function (effective braking), and were not suitable for their intended use.

231. Mazda was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles and the existence of the Brake Defect because:

a. Mazda was in a superior position to know the true state of facts about the Brake Defect and associated repair costs in the Class Vehicles;

b. Plaintiff and Class Members could not reasonably have been expected to learn or discover the Brake Defect until manifestation of the Defect;

c. Mazda knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Brake Defect and associated repair costs it causes until manifestation of the Defect;

d. Mazda actively concealed the Brake Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

232. In failing to disclose the Brake Defect and the associated safety risks and repair costs that result from it, Mazda has knowingly and intentionally concealed material facts and breached its duty to disclose.

233. The facts concealed or not disclosed by Mazda to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them

to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and the Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

234. Plaintiff and Class Members' injuries were proximately caused by Mazda's fraudulent and deceptive business practices.

235. In accordance with § 1782(a) of the CLRA, Plaintiff's counsel, on behalf of Plaintiff and the Class Members, served MMC and MNAO via Certified Mail and U.S.P.S. International Mail on May 21, 2025, with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased and/or leased by Plaintiff and Class Members and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice.

236. Plaintiff and the Class members seek equitable relief and will amend this claim to seek damages after the notice period.

**COUNT THREE:**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. §§ 17200, *et seq.*)**
**(On Behalf of the Nationwide Class)**

237. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

238. Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC.

239. California's Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code §17200.

240. Mazda is a "person" as defined by Cal. Bus. & Prof. Code §17201.

241.  Pursuant to Cal. Bus. & Prof. Code §17204, Plaintiff and the members of the proposed Class have suffered injury-in-fact and have lost money or property because of the unfair competition set forth herein.

242.  Plaintiff alleges, on information and belief, that: (a) the decisions of Mazda concerning the advertising, marketing, and warranty policies and procedures regarding the Class Vehicles emanate from MNAO's headquarters in Irvine, California; (b) Mazda's decisions on how to present Class Vehicles in advertising in the United States emanate from MNAO's headquarters in Irvine, California; (c) decisions as to recalls, Service Alerts, and whether to make warranty repairs emanate from MNAO's headquarters in Irvine, California; and (d) the relevant personnel from Mazda work at MNAO's headquarters in Irvine, California, or coordinate and make decisions concerning the above through facilities and other personnel in Irvine, California. For these reasons, Plaintiff and the Nationwide Class' claims emanate from Mazda's actions in the State of California and it is appropriate for Mazda to be held to comply with California law on a nationwide basis.

243.  Mazda's conduct, as described herein, was and is in violation of the UCL. Mazda's conduct violates the UCL by, among other things: (a) failing to disclose the existence of the Brake Defect in the Class Vehicles (and the costs, risks, and diminished value of the Class Vehicles as a result of this Defect); (b) marketing and promoting the Class Vehicles as being free from defect, including the Brake Defect which causes the Class Vehicles to fail to perform an essential function (effectively braking) and creates safety risks; (c) knowingly and intentionally concealing the existence of the Brake Defect in the Class Vehicles; (d) violating California laws, including the CLRA; and (e) breaching its express and implied warranties.

244. Mazda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiff and other Class Members.

245. In purchasing or leasing the Class Vehicles, Plaintiff and other Class Members were deceived by Mazda's failure to disclose the Brake Defect found in the Class Vehicles.

246. Plaintiff and Class Members reasonably relied upon Mazda's false misrepresentations and omissions to believe they were receiving a Class Vehicle with certain benefits, including safety. This perception induced reasonable purchasers, including Plaintiff and Class Members, to purchase or lease Class Vehicles, which they would not otherwise have done had they known the truth. Plaintiff and Class Members had no way of knowing that Mazda's representations were false, misleading, and incomplete. As alleged herein, Mazda engaged in a pattern of deception and public silence in the fact of a known Brake Defect in the Class Vehicles. Plaintiff and other Class Members did not, and could not, discover Mazda's deception on their own.

247. Mazda knew or should have known that its conduct violated the UCL.

248. Mazda owed Plaintiff and other Class Members a duty to disclose the truth about the Brake Defect because the Defect created a safety hazard and Mazda: (a) possessed exclusive and superior knowledge of the Defect prior to making sales and leases of the Class Vehicles; (b) intentionally concealed the Defect from Plaintiff and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Vehicles due to the Brake Defect. Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the Brake Defect.

249. Mazda made material misrepresentations and omissions, which Plaintiff and other Class Members reasonably relied on, but failed to disclose that the Brake Defect plagues the Class Vehicles.

250. Mazda's conduct proximately caused injuries to Plaintiff and other Class Members that purchased or leased the Class Vehicles and suffered harm as alleged herein.

251. Plaintiff and other Class Members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Mazda's conduct in that Plaintiff and other Class Members incurred costs related to the Brake Defect, including replacement of brake-related parts and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

252. Plaintiff and Class Members are suffering from continuing injuries because Mazda has failed to issue an adequate remedy for the Brake Defect found in each Class Vehicle. Mazda's unlawful acts and practices complained of herein affect the public interest.

253. Mazda's misrepresentations and omissions alleged herein caused Plaintiff and other Class Members to purchase or lease their Class Vehicles. Plaintiff and Class Members acted reasonably when they relied on Mazda's representations in omissions in purchasing or leasing their Class Vehicles— reasonably believing these were truthful and lawful. Absent those misrepresentations and omissions, Plaintiff and other Class Members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not suffer from the Brake Defect and lived up to industry standards.

254.  Accordingly, Plaintiff and other Class Members have suffered injury-in-fact, including lost money or property, as a result of Mazda's misrepresentations and omissions.

255.  Plaintiff requests that this Court enjoin further unlawful, unfair, and/or fraudulent acts or practices by Mazda, and order restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof. Code §17200, including reasonable attorneys' fees and costs under Cal. Civ. Proc. Code §1021.5.

**COUNT FOUR:**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. §§ 17500, *et seq.*)**
**(On Behalf of the Nationwide Class)**

256.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

257.  Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC.

258.  CAL. BUS. & PROF. CODE §17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

259.  Mazda caused to be made or disseminated, through California and the United States, using advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Mazda to be untrue and misleading to consumers, including Plaintiff and Class Members.

260. Mazda violated Cal. Bus. & Prof. Code §17500 because of the misrepresentations and omissions regarding the quality, safety, and reliability of the Class Vehicles and the Brake Defect contained in Class Vehicles as well as the associated safety risks and repair costs that result, as set forth in this Complaint, were material and likely to deceive a reasonable consumer.

261. Mazda has also violated Cal. Bus. & Prof. Code §17500 because the misrepresentations and omissions regarding the existence of a repair for the Defect and Mazda's ability and intention to render such a repair, as set forth in this Complaint, were material and likely to deceive a reasonable consumer, including Plaintiff and Class Members.

262. Plaintiff and Class Members have suffered an injury-in-fact, including the loss of money or property, as a result of Mazda's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and Class Members relied on the misrepresentations and/or omissions of Mazda with respect to the quality, safety, and reliability of the Class Vehicles as well as the existence of a repair for the Defect. Mazda's representations turned out to be false because, as a result of the Brake Defect, that could result in decrease braking performance or brake failure, the Class Vehicles are unsafe, unreliable, and not of high quality. Additionally, no permanent and reliable repair exists for the Brake Defect. Had Plaintiff and Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

263. Accordingly, Plaintiff and Class members overpaid for their Class Vehicles and did not receive the benefit of the bargain.

264. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Mazda's business. Mazda's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

265.  Plaintiff, individually and on behalf of the Class, request that this Court enter such Orders or judgments as may be necessary to restore to Plaintiff and Class Members any money Mazda acquired by unfair competition, including restitution and/or restitutionary disgorgement and all other relief allowed under Cal. Bus. & Prof. Code §17500, including reasonable attorneys' fees and costs under Cal. Civ. Proc. Code §1021.5.

## COUNT FIVE:
## BREACH OF EXPRESS WARRANTY
### (Cal. Com. Code §§ 2313, 10210)
### (On Behalf of the Nationwide Class)

266. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

267. Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC.

268. Mazda is a "merchant" (as defined by Cal. Com. Code §2104(1)), a "seller" (as defined by Cal. Com. Code §2103(d)), and "lessor" of motor vehicles (as defined by Cal. Civ. Code §2985.7(b)).

269. Plaintiff and the Nationwide Class's claims emanate from Mazda's actions in California, and thus, the application of California law extraterritorially to the claims of the Class in this action is proper. As alleged herein, Mazda's advertising, marketing, and warranty policies and procedures regarding the Class Vehicles emanate from MNAO's headquarters in Irvine, California. In addition, upon information and belief, Mazda's advertising decisions emanated from MNAO's headquarters in Irvine, California, as well as its decisions as to issue recalls, services bulletins, and whether to make warranty repairs. Further, Mazda's relevant personnel are located at facilities in Irvine, California.

270.  Pursuant to Cal. Com. Code §2313 (a)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

271.  Pursuant to Cal. Com. Code §10210(a)(1), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

272.  The Class Vehicles are "goods" within the meaning of the Uniform Commercial Code ("U.C.C.") and relevant state law, including Cal. Com. Code §2105(1).

273.  Mazda provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its written express warranties, Mazda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

274.  Mazda's written express warranties formed the basis of the bargain that was reached when Plaintiff and other Class Members purchased or leased their Class Vehicles.

275.  Mazda breached the express warranties through the acts and omissions described above.

276.  Plaintiff and other Class Members have had sufficient direct dealings with either Mazda or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Mazda on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Mazda and their dealers, and specifically, of Mazda's express warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles and have no rights under the warranty agreements provided with Class Vehicles; the warranty agreements were designed

for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Mazda itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Mazda.

277. Mazda had notice of its breach of its express warranty, as alleged herein.

278. Mazda knew that it was unable to provide adequate remedy under the warranty. Mazda was also provided notice of the Brake Defect by way of internal investigations, complaints made directly to Mazda and its authorized dealers, including by Plaintiff, Class members taking their vehicles to its dealers, public complaints made online, the Service Alert, this lawsuit and the individual notice letter sent by Plaintiff on May 21, 2025, within a reasonable amount of time after the Defect became public. Mazda has not remedied its breach.

279. Further, Mazda has refused to provide an adequate warranty repair for the Brake Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers, like Plaintiff, that have directly communicated with Mazda and presented their vehicles for warranty repair due to the Brake Defect have been denied adequate repairs.

280. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and other Class Members whole and because Mazda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

281. Accordingly, recovery by Plaintiff and other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

282. Also, as alleged in more detail herein, at the time that Mazda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed material facts regarding its Class Vehicles. Plaintiff and other Class Members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

283. As a direct and proximate result of Mazda's breach of its express warranty, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

284. Plaintiff, on behalf of himself, and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT SIX:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Com. Code §§ 2314, 10212)
### (On Behalf of the Nationwide Class)

285. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

286. Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC.

287. Mazda is a "merchant" (as defined by Cal. Com. Code §2104(1)), a "seller" (as defined by Cal. Com. Code §2103(d)), and "lessor" of motor vehicles (as defined by Cal. Civ. Code §2985.7(b)).

288. The Class Vehicles are "goods" within the meaning of the Uniform Commercial Code and relevant state law, including Cal. Com. Code §2105(1).

289. Plaintiff and the Class' claims emanate from Mazda's actions in California, and thus, the application of California law extraterritorially to the claims of the Class in this action is proper. As alleged herein, Mazda's advertising,

marketing, and warranty policies and procedures regarding the Class Vehicles emanate from MNAO's headquarters in Irvine, California. In addition, upon information and belief, Mazda's advertising decisions regarding the Class Vehicles emanated from MNAO's headquarters in Irvine, California, as well as its decisions as to issue recalls, services bulletins, and whether to make warranty repairs. Further, Mazda's relevant personnel are located at facilities in Irvine, California.

290. Mazda was, at all relevant times, the manufacturer, distributor, warrantor, seller and/or lessor of the Class Vehicles. Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

291. Pursuant to CAL. Com. Code §2314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code §2314(2)(c),(f).

292. Mazda provided Plaintiff and other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.

293. The Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or lease and thereafter because, *inter alia*, the Class Vehicles suffer from the Brake Defect, as alleged herein, that manifests in excessive deterioration of braking system components, decreased braking performance, and a high-pitched creaking, squealing, or squeaking noise and juddering and/or vibration when the brakes are applied. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

294. Mazda impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Mazda, were safe and reliable for providing transportation, and would not result in excessive deterioration of brake components and decreased braking performance.

295.  Contrary to the applicable implied warranties, the Class Vehicles at the time of sale or lease and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design and/or manufacturing defect.

296. Mazda knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff and the Class. Mazda was provided notice of these issues by complaints lodged by consumers online and to dealerships—which Mazda routinely monitors—before or within a reasonable amount of time after the allegations of the Defect became public.

297. Mazda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

298.  Plaintiff and other Class Members have had sufficient direct dealings with either Mazda or its agents—such as its dealerships, consumer affairs departments, and technical support—to establish privity of contract between Mazda on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Mazda and their dealers, and specifically, of Mazda's implied warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles and have no rights

under the warranty agreements provided with Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Mazda itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Mazda.

299.  Plaintiff, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT SEVEN:**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class)**

300. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

301.  This claim is pled in the alternative to the contract-based claims alleged herein.

302.  Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC under California common law. In the alternative, Plaintiff brings this claim on behalf of the New York Class, under the common law of that state.

303. Mazda designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles during the relevant period herein.

304.  Plaintiff and members of the Class conferred non-gratuitous benefits upon Mazda, without knowledge that the Class Vehicles contained the Defect.

305.  Mazda appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class.

306.  Mazda accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a

result of Mazda's unconscionable wrongdoing, Plaintiff and members of the Class were not receiving products of high quality, nature, fitness, or value that had been represented by Mazda and reasonable consumers would have expected.

307. Retaining the non-gratuitous benefits conferred upon Mazda by Plaintiff and members of the Class under these circumstances made Mazda's retention of the non-gratuitous benefits unjust and inequitable.

308. Because Mazda's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Mazda's wrongful profits, revenue, and benefits in a manner established by the Court. Monetary damages are not an adequate remedy for the above requested monetary injunctive relief because Plaintiff and the Class Members also suffer the threat of future harm in that they are unable, due to the conduct of Mazda, as alleged herein, to rely on Mazda's advertising and statements concerning Mazda vehicles in the future and therefore will be deprived of the ability to purchase a vehicle manufactured by Mazda though Plaintiff and other Class Members would like to do so.

309. Additionally, Plaintiff seeks injunctive relief to compel Mazda to offer, under warranty, remediation solutions that Mazda identifies. Plaintiff also seek injunctive relief enjoining Mazda from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Mazda from selling the Class Vehicles with the misleading information; compelling Mazda to provide Class Members with replacement vehicles that do not contain the defects alleged herein; compelling Mazda to extend the applicable warranties to a reasonable period of time; compelling Mazda to update its owners' manuals to inform owners and lessees of the Brake Defect; compelling Mazda to contact third-party insurers to inform them that accidents and collisions that resulted from the Brake Defect should

not be considered driver-fault incidences; and/or compelling Mazda to reform its warranties, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranties have been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**COUNT EIGHT:**
**FRAUDULENT CONCEALMENT**
**(On Behalf of the Nationwide Class)**

310. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

311. Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class against Defendants MNAO and MMC under California common law. In the alternative, Plaintiff brings this claim on behalf of the New York Class, under the common law of that state.

312. Mazda fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the existence of the Defect.

313. Despite advertising the Class Vehicles as safe, reliable, and being of high quality, Mazda knew when it manufactured, marketed, and sold or leased the Class Vehicles that the Class Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and subjected the Class Vehicles to excessive and premature wear of brake pads and brake-related parts that rendered the Class Vehicles unreliable by decreasing braking performance and posing significant safety hazards to drivers.

314. Mazda failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles, and Mazda knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit. Through its active concealment and/or suppression of these material

facts, Mazda sought to increase consumer confidence in the Class Vehicles and falsely assure purchasers and lessors of the same that the Class Vehicles were of sound quality and that Mazda was a reputable manufacturer that stands behind the automobiles it manufactures.

315. Mazda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recall that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

316. Plaintiff and Class Members were unaware, and could not reasonably discover on their own, that Mazda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

317. Mazda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

a. Mazda had exclusive or far superior knowledge of the Brake Defect and concealment thereof;

b. The facts regarding the Brake Defect and concealment thereof were known and/or accessible only to Mazda;

c. Mazda knew that Plaintiff and Class Members did not know about, or could not reasonably discover, the Brake Defect and concealment thereof; and

d. Mazda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Brake Defect that were misleading, deceptive, and incomplete without the disclosure of the fact that the Class Vehicles suffered from an inherent design and/or manufacturing defect.

318. These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially reduced the value of the Class Vehicles purchased

or leased by Plaintiff and Class Members. Whether the Class Vehicles were defective, of sound quality, safe, reliable, and whether Mazda stood behind such vehicles would have been an important factor in Plaintiff and the Class Members' decisions to purchase or lease the vehicles. Plaintiff and Class Members trusted Mazda not to sell them vehicles that were defective and significantly overpriced.

319. Mazda intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Mazda and reasonably expected by consumers.

320. Plaintiff and Class Members were unaware of these omitted material facts and would have paid less for the Class Vehicles or would not have purchased/leased them at all. Plaintiff and Class members did not receive the benefit of their bargain due to Mazda's fraudulent concealment. Plaintiff and Class Members' actions in leasing or purchasing the Class Vehicles were justified. Mazda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiff, or Class Members.

321. Plaintiff and Class Members relied to their detriment upon Mazda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability of the Class Vehicles.

322. As a direct and proximate result of Mazda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiff and Class Members suffered injury. They purchased or leased Class Vehicles that had a diminished value by reason of Mazda's concealment of, and failure to disclose, the Brake Defect. In many cases, Class Members also paid substantial money to (unsuccessfully) repair the Brake Defect.

323. Accordingly, Mazda is liable to the Nationwide Class and/or Classes for their damages in an amount to be proven at trial.

324.  On information and belief, Mazda has still not made full and adequate disclosure and continues to defraud Plaintiff and Class Members. Mazda also continues to conceal material information regarding the Defect.

325.  Mazda's acts were done deliberately, with intent to defraud, and in reckless disregard of the Plaintiff's and Class Members' rights. Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT NINE:
### BREACH OF THE DECEPTIVE ACTS AND PRACTICES STATUTE
### (N.Y. Gen. Bus. Law §§ 349 *et seq.*)
### (On Behalf of the New York Class)

326.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

327.  This Count is brought on behalf of the New York Class against Defendants MNAO and MMC.

328.  The New York Class Members and Mazda are "persons" under N.Y. Gen. Bus. Law §349(h), the New York Consumer Protection from Deceptive Acts and Practices statute ("NY DAP").

329.  Mazda's actions as set forth herein occurred in the conduct of trade or commerce under the NY DAP.

330.  The NY DAP makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349. Mazda's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

331.  As alleged in more detail herein, at the time that Mazda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed

material facts regarding its Class Vehicles. Plaintiff and other Class Members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

332.  As alleged herein, consumers were reporting the problem with the Class Vehicles' braking systems as early as January 2024. Further, Mazda uses a variety of means to track data about how its vehicles are performing after they are sold, including through tracking complaints, warranty claims, replacement parts data, and other aggregated data sources.

333. New York Class Members had no way of knowing that Mazda's representations were false and misleading, and that the braking system in their Class Vehicles suffered from the Defect.

334. Mazda thus violated NY DAP by, at minimum: (a) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising Class Vehicles with the intent not to sell or lease them as advertised; and (d) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

335. Mazda intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York Class.

336.  To protect their profits, avoid remediation costs, and protect their public image, Mazda concealed the dangers and risks posed by the Brake Defect in the Class Vehicles and allowed unsuspecting purchasers and lessees to buy/lease the Class Vehicles, and allowed them to continue driving dangerous vehicles.

337.  Mazda knew or should have known that their conduct violated the NY DAP.

338.  Mazda owed the New York Class a duty to disclose the true nature of the Class Vehicles, because Mazda:

a. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b. intentionally concealed the foregoing from Plaintiff, and/or Class Members; and/or

c. made incomplete representations about the Class Vehicles generally, and the safety and reliability of the Class Vehicles, in particular, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

339. Mazda's false and misleading statements about the Class Vehicles were material to Plaintiff and to the New York Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

340. Mazda's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including the New York Class Members, about the safety, quality, and reliability of their Class Vehicles, and the true value of the Class Vehicles.

341. Mazda's violations present a continuing risk to the New York Class, as well as to the general public. Mazda's unlawful acts and practices complained of herein affect the public interest.

342. New York Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Mazda's misrepresentations and concealment of and failure to disclose material information. Mazda had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAP. All owners of Class Vehicles suffered ascertainable loss as a result of

89

Mazda's deceptive and unfair acts and practices made in the course of Mazda's business.

343. As a direct and proximate result of Mazda's violations of the NY DAP, New York Class Members have suffered injury-in-fact and/or actual damage.

344. As a result of the foregoing willful, knowing, and wrongful conduct of Mazda, New York Class Members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an Order enjoining Mazda's deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAP.

345. Plaintiff, on behalf of himself and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TEN:**
**BREACH OF THE DECEPTIVE ACTS AND PRACTICES STATUTE**
**(N.Y. Gen. Bus. Law §§ 350 *et seq.*)**
**(On Behalf of the New York Class)**

346. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

347. This Count is brought on behalf of the New York Class against Defendants MNAO and MMC.

348. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a.

349.  As alleged in more detail herein, at the time Mazda advertised its Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and, in its advertising, Mazda improperly concealed material facts regarding its Class Vehicles.

350. Mazda violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding the Class Vehicles and/or the Brake Defect, as described above, were material and likely to deceive a reasonable consumer.

351.  Plaintiff and other Class Members have suffered injury, including the loss of money or property, as a result of Mazda's false advertising. In purchasing or leasing their Class Vehicles, Plaintiff and other Class Members reasonably relied on the misrepresentations and/or omissions of Mazda with respect to the safety, quality, and reliability of the Class Vehicles and/or the braking system installed in them. Mazda's representations turned out to be untrue—the Brake Defect described herein renders the Class Vehicles susceptible to deterioration of the vehicles' braking system components, requiring frequent repair and/or replacement of parts, decreased braking performance, and the vehicles to exhibit a high-pitched creaking, squealing, or squeaking noise and juddering and/or vibration, as described herein. Had Plaintiff and other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much to do so.

352. Accordingly, Plaintiff and other Class Members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles, which have also suffered diminution in value.

353.  As a result of the foregoing willful, knowing, and wrongful conduct of Mazda, New York Class Members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater, treble damages up to $1,000, punitive

damages to the extent available under the law, reasonable attorneys' fees and costs, an Order enjoining Mazda's deceptive and unfair conduct, and all other just and appropriate relief available under N.Y. Gen. Bus. Law § 350

354.  Plaintiff, on behalf of himself and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT ELEVEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law §§ 2-314 and 2-A-212)**
**(On Behalf of the New York Class)**

355.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

356.  This Count is brought on behalf of the New York Class against Defendants MNAO and MMC.

357.  Mazda is and was, at all relevant times, a "merchant" with respect to motor vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of motor vehicles under N.Y. U.C.C. LAW §2-103(1)(d). With respect to leases, Mazda is and was, at all relevant times, a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2-A-103(1)(p).

358.  The Class Vehicles are and were, at all relevant times, "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2-A-103(1)(h).

359.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. U.C.C. LAW §§2- 314(2)(c) and 2-A-212(2)(c).

360.  These Class Vehicles, when sold or leased to Plaintiff and Class Members, and at all times thereafter, were subject to the Defect, as described herein, and were therefore not fit for the ordinary purpose for which vehicles are used.

361.   Mazda had notice of its breach of implied warranties, as alleged herein.

362.  Plaintiff and other Class Members have had sufficient direct dealings with either Mazda or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Mazda on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Mazda and their dealers, and specifically, of Mazda's express warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles and have no rights under the warranty agreements provided with Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Mazda itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Mazda. Moreover, as alleged herein, the Brake Defect manifests in, *inter alia*, excessive deterioration of braking system components and a high-pitched creaking, squealing, or squeaking noise and juddering and/or vibration juddering and/or vibration when the brakes are applied. These symptoms of the Defect, which decrease braking performance and thereby increase the risk of accidents to Plaintiff, consumers, other drivers, and pedestrians, render the Class Vehicles dangerous to drive.

363.  Mazda knew that it was unable to provide adequate remedy under the warranty. Mazda was also provided notice of the Brake Defect by way of internal investigations, complaints made directly to Mazda and its authorized dealers, including by Plaintiff, Class Members taking their vehicles to its dealers, public complaints made online, the Service Alert, this lawsuit, and the individual notice letter sent by Plaintiff on May 21, 2025, within a reasonable amount of time after the Defect became public. Mazda has not remedied its breach.

364. Further, Mazda has refused to provide an adequate warranty repair for the Brake Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers, like Plaintiff, that have directly communicated with Mazda and presented their vehicles for warranty repair due to the Brake Defect have been denied adequate repairs.

365. As a direct and proximate result of Mazda's breach of the implied warranty of merchantability, New York Class Members have been damaged in an amount to be proven at trial.

366. Plaintiff, on behalf of himself and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TWELVE:**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. Law §§ 2-313 and 2-A-210)**
**(On Behalf of the New York Class)**

367. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

368. This Count is brought on behalf of the New York Class against Defendants MNAO and MMC.

369. Mazda is and was, at all relevant times, a "merchant" with respect to motor vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of motor vehicles under N.Y. U.C.C. LAW §2-103(1)(d).

370. With respect to leases, Mazda is and was, at all relevant times, a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2-A-103(1)(p).

371. The Class Vehicles are and were, at all relevant times, "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2-A-103(1)(h).

372. Pursuant to N.Y. U.C.C Law § 2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

373. Pursuant to N.Y. U.C.C Law § 2-313(1)(b), "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

374. Mazda provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its express warranties, Mazda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

375. Mazda's written express warranties formed the basis of the bargain that was reached when Plaintiff or other Class Members purchased or leased their Class Vehicles.

376. Mazda breached the express warranties through the acts and omissions described above.

377. Plaintiff and other Class Members have had sufficient direct dealings with either Mazda or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Mazda on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Mazda and their dealers, and specifically, of Mazda's express warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles and have no rights under the warranty agreements provided with Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Mazda itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and

disseminated directly by Mazda. Moreover, as alleged herein, the Brake Defect manifests in, *inter alia*, excessive deterioration of braking system components and a high-pitched creaking, squealing, or squeaking noise and juddering and/or vibration juddering and/or vibration when the brakes are applied. These symptoms of the Defect, which decrease braking performance and thereby increase the risk of accidents, render the Class Vehicles dangerous to drive.

378.  Mazda knew that it was unable to provide adequate remedy under the warranty. Mazda was also provided notice of the Brake Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Mazda has not remedied its breach.

379.  Further, Mazda has refused to provide an adequate warranty repair for the Brake Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers, like Plaintiff, that have presented their vehicles for warranty repair due to the Brake Defect have been denied adequate repairs.

380.  The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and other Class Members whole and because Mazda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

381.  Accordingly, recovery by Plaintiff and other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

382.  Also, as alleged in more detail herein, at the time that Mazda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed material facts regarding its Class Vehicles. Plaintiff and other Class Members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

383.  Mazda had notice of its breach of express warranty, as alleged herein.

384.  As a direct and proximate result of Mazda's breach of its express warranty, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

385.  Plaintiff, on behalf of himself, and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully prays that the Court:

A.  Issue an Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declaring that Plaintiff is a proper Class representative; and appointing Plaintiff's counsel as Class Counsel;

B.  Award Plaintiff and Class Members damages, restitution, and disgorgement in an amount to be determined at trial;

C.  Order appropriate injunctive and/or declaratory relief, including, but not limited to, an Order that requires Mazda to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

D.  Award Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses, including pursuant to California Code of Civil Procedure §1021.5;

E.  Award pre- and post-judgment interest at the maximum legal rate; and

F.  Grant all such other relief as is just and proper.

## XII. DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, demands a jury trial on all claims so triable.

Dated:  May 22, 2025

By: _/s/ Elizabeth A. Fegan_
Elizabeth A. Fegan (CA Bar No. 355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Ste. 700
Santa Monica, CA 90401
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*pro hac vice* forthcoming)
FEGAN SCOTT LLC
305 Broadway, 7th Floor
New York, NY 10007
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com